Charles Samuel McDONALD, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

June 13, 1978.

Rehearing Denied Aug. 22, 1978.

Terrence R. Fitzgerald, Deputy Dist. Defender, Daniel T. Goyette, Associate Director, William C. Grimes, Asst. Public Defender, Louisville, for appellant.

Robert F. Stephens, Atty. Gen., David M. Whalin, Asst. Atty. Gen., Frankfort, for appellee.

STEPHENSON, Justice.

Charles Samuel McDonald was indicted and tried for the offenses of indecent and immoral practices, KRS 435.105, assault and battery, KRS 431.075, and rape, KRS 435.-090.[1]

A jury found McDonald guilty on all three counts and sentenced him to imprisonment for five years on the count of indecent and immoral practices, twelve months on the count of assault and battery, and life without parole on the count of rape. McDonald appeals. We affirm.

On June 6, 1974, McDonald was released on parole from LaGrange. In 1973, McDonald was convicted on a plea of guilty for two offenses of committing indecent and immoral practices upon his twelve-year-old stepdaughter, Renita Griffin. He was sentenced to three years' imprisonment on one charge and to ten years on the other charge which was probated.

On the morning of June 7, according to McDonald, he went to his wife Evelyn's house, where an argument ensued about his wife's relationship with another man. His wife's version was that McDonald forced his way into the house and proceeded to beat her and speak of revenge against her and Renita Griffin, the stepdaughter. McDonald admitted that he struck his wife several times. While this argument was proceeding, Renita and a girl friend were in an upstairs bedroom. McDonald, hearing movement upstairs, went up the stairs yelling for the other man to show himself and forced open the bedroom door to find Renita there. According to McDonald, he then left Renita and her girl friend and resumed the argument with his wife. According to the wife and Renita, he dragged both of them into another bedroom where he forced his wife to have oral sex with him and then proceeded to rape Renita. The scenario ended when the wife ran down the stairs and out of the house with McDonald in pursuit. The wife called the police and McDonald was apprehended and placed under arrest. Three years later, on June 7, 1977, McDonald was tried and convicted of the charge.

The first and most significant argument for reversal is the assertion that the delay between arrest and trial denied McDonald his constitutional right to a speedy trial.

The case was first set for trial on October 24, 1974, and the succeeding dates the case was set for trial appear as follows:

1. On October 24, 1974, case continued to January 15, 1975, on motion of Commonwealth.

2. On January 15, 1975, case continued to March 3, 1975, on motion of McDonald.

3. On March 3, 1975, case continued to May 14, 1975, on motion of McDonald.

4. On May 14, 1975, case continued to September 23, 1975, on motion of Commonwealth.

5. On September 23, 1975, trial of the case commenced. On motion of McDonald a mistrial was granted by the trial court and the case continued to January 14, 1976. McDonald's motion to dismiss for lack of speedy trial was overruled.

6. On January 14, 1976, the case was continued to April 5, 1976, on court's own motion. McDonald's motion to dismiss for lack of speedy trial overruled.

7. On April 5, 1976, the case was passed by the trial court for the purpose of sub-

---

1. Offenses committed prior to the effective date of the new Kentucky Penal Code.

jecting McDonald to a psychiatric examination. After the results of the examination were filed with the trial court, the Commonwealth moved to have the case set for trial. The trial court then set the case for trial on October 25, 1976. In the interim, McDonald filed motion to dismiss for lack of speedy trial.

8. On October 25, 1976, the case was continued to February 9, 1977, on joint motion of the Commonwealth and McDonald.

9. On February 9, 1977, the case was continued to March 21, 1977, on motion of the Commonwealth.

10. March 21, 1977, the case was ordered transferred to another division of the court due to a conflict of interest on the part of the new judge sitting in the division, and the case was continued to April 1, 1977.

11. On April 1, 1977, the case was passed to April 4, 1977, on the trial court's own motion.

12. On April 4, 1977, the case was continued to June 6, 1977, on motion of the Commonwealth.

13. On June 7, 1977, the trial commenced resulting in the conviction here on appeal.

McDonald was in custody during the entire period. After the mistrial was granted by the trial court on September 23, 1975, the trial court revoked McDonald's probation of the previous charge and he was returned to the penitentiary.

■ We are in accord with the proposition that a delay of three years between arrest and trial dictates an inquiry into the circumstances of the delay in order to determine if there has been a violation of the constitutional guarantees of a speedy trial.

The Supreme Court of the United States, after considering the speedy trial issue on several occasions, finally in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), fashioned a set of factors to be considered in resolving the issue of speedy trial. These four factors which are to be considered are as follows:

1. The length of the delay;
2. The reasons for the delay;
3. The defendant's assertion of his right to a speedy trial; and
4. Prejudice to the defendant.

*Barker* was finally brought to trial more than five years after his arrest. From arrest in 1958 until 1963, when Barker was tried and convicted, the Commonwealth was granted a series of sixteen continuances of the Barker trial. Early in 1962, Barker moved to dismiss for lack of speedy trial. He had made no objection to the continuances until three and one-half years after he was arrested. There was no showing that any of Barker's witnesses had died or were otherwise unavailable owing to the delay. The reason for the delay in bringing Barker to trial was the belief by the prosecution that there was a stronger case against an accomplice, Manning, and that if Manning could not be persuaded to testify against Barker, it was unlikely Barker would be convicted. Manning was finally convicted of one of the murders in March 1962 after the fifth trial and was convicted of the other murder in December of 1962. Two of Manning's trials resulted in hung juries and two were reversed by this court for new trials during the period. Thereafter there was a delay due to the illness of a key prosecution witness; and, finally in 1963, Barker was brought to trial and convicted with his accomplice Manning as the chief prosecution witness.

In affirming the case, the U.S. Supreme Court applied the balancing factors, concluding that the delay was inordinate but that Barker had never asserted his right to a speedy trial, nor objected to the continuances until early in 1963, and that there was only minimal prejudice to Barker by reason of the delay. The controlling conclusion was that Barker did not want a speedy trial.

■ As to the length of the delay here, it is of sufficient duration to trigger an inquiry. The denial of the right to a speedy trial cannot be determined exactly in an all-inclusive time period. Whether this right has been violated must depend on the

particular context of each case. It is a vague concept incapable of precise definition and must be balanced with the procedural safeguards provided an accused, which in themselves cause the process to move at a deliberate pace, and recognition of the fact that dismissal for a violation of the right to speedy trial is a severe remedy from the standpoint of society. In addition, delay can work to the advantage of a defendant. Consequently, the length of the delay must be balanced against the other factors.

The reasons for the delay here militate against McDonald. Throughout these proceedings it is apparent the Commonwealth was making a good-faith effort to bring McDonald to trial. Here McDonald did not object to any of the continuances. The record is vague as to the reasons for many of the continuances, but *Barker* recognizes that a valid reason for the continuance should serve to justify appropriate delay. McDonald does not argue that any of the continuances were inappropriate. Finally, on this factor McDonald participated in the delay. The continuance on March 3, 1975, was on McDonald's motion. On September 23, 1975, the case was continued after the trial court granted McDonald's motion for a mistrial. As late as October 25, 1976, McDonald participated in a continuance on a joint motion with the Commonwealth. *Barker* observed that if delay is attributed to the defendant, then his waiver may be given effect under standard waiver doctrine.

During the course of these proceedings, McDonald on four separate occasions filed motions to dismiss the charges on the ground that he had been denied a speedy trial. The first motion to dismiss for lack of a speedy trial was made at the hearing immediately after his motion for a mistrial was granted and can hardly be characterized as a good-faith motion. We cannot say that a motion to dismiss for lack of a speedy trial is the same as a motion for a speedy trial in that it unequivocally puts the trial court on notice that the defendant demands a speedy trial. The motion to dismiss presents an issue which must be decided by the trial court based on the delay prior to the motion. Here the trial court was never put on notice that McDonald demanded or wanted a speedy trial.

In *Barker v. Commonwealth*, Ky., 385 S.W.2d 671 (1964), this court considered Barker's motion to dismiss for denial of a speedy trial as a motion for speedy trial. However, in *Barker* the opinion observed that it was clear that Barker had not made an alternative motion for an immediate trial, thus we consider the United States Supreme Court treated the motion to dismiss for denial of a speedy trial as different from a motion for speedy trial. *Barker* rejected a rigid demand-waiver rule but observed that there is some responsibility on the defendant to assert his right to a speedy trial.

As to prejudice to McDonald, there is no showing that the delay confounded or impaired his defense in any respect, nor did the delay result in unavailability of witnesses for McDonald.

We are of the opinion that the delay here was extraordinary and presumptively prejudicial; however, in balancing the factors set out in *Barker* we are of the further opinion the prosecution exercised good faith in attempting to bring McDonald to trial, the delays were not shown to be for other than valid reasons and a significant portion of the delays is attributed to McDonald. We are of the further opinion that McDonald did not assert his right to a speedy trial, rather he hoped to take advantage of the delay in order to obtain a dismissal of the charge, and that the prejudice to McDonald by reason of the delay was minimal if any prejudice resulted at all. We are not advised of the effect the pending charges had on McDonald's prospects for parole. We conclude that balancing the *Barker* factors McDonald was not denied his constitutional right to a speedy trial.

In *Moore v. Arizona*, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973), there was a three-year delay after Moore was charged before he was brought to trial. During this period Moore was in prison in California

and had asserted his right to a speedy trial. Also a defense witness had been deported and was unavailable. The opinion did not hold that this delay was a denial of a speedy trial but remanded the case to the Arizona Supreme Court to apply the balancing factors in *Barker* instead of relying solely on lack of prejudice in the delay.

■ Next McDonald argues that prosecutorial misconduct forced him to move for a mistrial on September 23, 1975, and thereby he was twice placed in jeopardy.

After the jury was sworn on September 23, 1975, the prosecution moved the trial court (a different trial court than finally tried the case) to reconsider a previous ruling on the admissibility of McDonald's prior convictions for sexual offenses against his stepdaughter. The trial court then held the prior convictions to be admissible. McDonald's counsel claimed surprise and that he was not prepared to meet the evidence. After a hearing in chambers with McDonald's counsel insisting on a mistrial, the trial court granted McDonald's motion and continued the case. McDonald argues improper conduct on the part of the prosecutor and the trial court in forcing him to request a mistrial. We are not prepared to say that it is prosecutorial misconduct to urge the trial court to reconsider an evidentiary ruling. We see no reason here for the granting of a motion for mistrial. McDonald may have been surprised, but the ruling did not involve any change that we can see in the conduct of the defense, nor did it involve an issue which would involve the defense calling other witnesses. The ruling involved a question of law and any error could be argued on appeal, so we do not see that McDonald's defense changed in any respect. As will be pointed out, the ruling of the trial court was correct. We conclude there was no prosecutorial misconduct and that jeopardy did not attach. Following this argument, McDonald attacks the ruling of the trial court in admitting into evidence the prior conviction of sexual offenses on his stepdaughter.

■ McDonald concedes that evidence of prior sexual conduct to show the lustful disposition of a defendant toward the victim is admissible based on our opinion in *Rigsby v. Commonwealth*, Ky., 495 S.W.2d 795 (1973); *Russell v. Commonwealth*, Ky., 482 S.W.2d 584 (1972); *Messmear v. Commonwealth*, Ky., 472 S.W.2d 682 (1971); and *Young v. Commonwealth*, Ky., 335 S.W.2d 949 (1960). He argues that a conviction for such acts must not be shown, and it is improper to show that he was imprisoned as a result of the convictions. The rationale of *Rigsby, Russell, Messmear* and *Young* is that prior acts of sexual misconduct toward the victim are admissible as tending to prove a lustful disposition toward the victim and that such evidence is competent for the purpose of corroboration and to show design, disposition or intent on the part of the accused. In each instance, it is recognized that this evidence is an exception to the general rule forbidding testimony of other criminal activities. By an extension of this reasoning, it would not be logical to exclude a *conviction* for such acts; and we are of the opinion that as testimony of such acts may be shown, so may a conviction for such acts.

Ordinarily we are of the opinion that where a conviction may be shown, testimony that the accused spent time in prison and the length of each stay is irrelevant and should not be admitted into testimony. However in the circumstances of this case where the offense occurred the day after McDonald's release from prison and the date of the conviction being before the jury, we cannot say that McDonald was unfairly prejudiced by this testimony which was so intertwined with the charged offenses that its mention was appropriate in these circumstances.

■ McDonald's assertion that a penalty of life without parole is cruel and unusual punishment and that such penalty constitutes sexual discrimination is answered in *Green v. Commonwealth*, Ky., 556 S.W.2d 684 (1977), and *Moore v. Cowan*, 560 F.2d 1298 (6th Cir. 1977), and we reject these assertions.

McDonald argues that the trial court erroneously declined to give instructions tendered by him. Among these instructions offered by McDonald was an instruction on "the presumption of innocence." The United States Supreme Court in *Taylor v. Kentucky*, —— U.S. ——, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978), held that on the facts of that case, failure to give a "presumption of innocence" instruction violated Taylor's right to a fair trial as guaranteed by the Due Process Clause of the Fourteenth Amendment. Here the trial court gave an instruction on "the presumption of innocence," and in our opinion the instruction given satisfied the requirements of *Taylor*.

We are of the further opinion that the refusal to give the other tendered instructions was not error.

The other assignment of error does not merit discussion.

The judgment is affirmed.

All concur.