William Edward SANDERS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 90–SC–954–MR.

Supreme Court of Kentucky.

Nov. 19, 1992.

Rehearing Denied Feb. 18, 1993.

G. Thomas Mercer, Appellate Public Advocate, Louisville, for appellant.

Chris Gorman, Atty. Gen., Laura Early, Asst. Atty. Gen., Criminal Appellate Div., Frankfort, for appellee.

SPAIN, Justice.

The Appellant, William Edward Sanders, appeals as a matter of right his conviction by a Daviess County jury on charges of first-degree rape, two counts of first-degree sodomy, first-degree robbery, first-degree burglary, second-degree burglary, and assault in the fourth degree. Consecutive sentences of imprisonment totaling one hundred and five (105) years were enhanced to one hundred and seventy (170) years pursuant to his further conviction as a persistent felony offender (PFO) in the second degree. In addition, a jail sentence of twelve (12) months on the misdemeanor assault charge was ordered to run concurrently.

One of the victims, twenty-year-old Mrs. Angela Dant, was attacked in her own home by a black intruder some thirty minutes after she and her two-year-old daughter had returned there. Mrs. Dant, who was six months pregnant, had picked up her daughter at a day care center after leaving her work at a nursing home.

In addition to the charges of rape, sodomy, robbery, and burglary involving Mrs. Dant and her home, the appellant was charged with and convicted of a break-in earlier the same night at the nearby home of Mary J. Terry, and with an assault upon Mrs. Dant's husband, Roger Dant, who arrived at his home just as the appellant was fleeing.

The appellant's first claim of error results from the trial court's denial of appellant's motion to suppress both the out-of-court and in-court identifications of the appellant as the perpetrator by Mrs. Dant. Upon being shown fourteen photographs two days after the crimes were committed, Mrs. Dant correctly identified the appellant. There were two photos each of the appellant and another man in the lineup. It is argued that the procedure denied the appellant due process by including two of his photos, thus singling out his personal characteristics, separate and apart from the other subjects, and accordingly being unduly suggestive.

Applying the standard of *Simmons v. United States*, 390 U.S. 377, 385, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1967), due process would only be denied where the lineup "was so impermissibly suggestive as to

give rise to the very substantial likelihood of irreparable misidentification." In *Dixon v. Commonwealth*, Ky., 505 S.W.2d 771 (1974), our Court stated that the use of two photographs of a defendant in a photographic lineup does not alone deny due process as we must look to the "totality of circumstances" to determine whether there is a likelihood of misidentification. The factors relevant to such a determination are "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972).

In the present case, Mrs. Dant had ample time to observe her assailant; her description of the assailant to police closely matched the characteristics of appellant; she stated upon viewing the photograph of appellant, "That is the man that raped me"; and the identification took place only two days after the crime. The pretrial identification was clearly reliable, and we therefore conclude that the motion to suppress both the in-court and out-of-court identifications was properly denied. As the identifications were properly admitted, we will not address the appellant's complaint regarding evidence obtained from a search with a warrant issued as a result of the identification.

Second, the appellant complains that his motion for a directed verdict of acquittal was improperly denied. Applying the test set forth in *Commonwealth v. Benham*, Ky., 816 S.W.2d 186 (1991), there was sufficient evidence to convict appellant, and the trial court properly denied the motion.

▮ The appellant's third contention is that his sentencing was improper by reason of the application of the "violent offender statute," KRS 439.3401. The statute in subsection (2) prescribes a twelve-year period of parole ineligibility for a violent offender sentenced to life imprisonment. All other violent offenders, under subsection (3), are subject to parole ineligibility for a period equal to at least fifty percent (50%) of the term of years of imprisonment to which they have been sentenced. Thus, under the appellant's enhanced sentence of imprisonment for one hundred and seventy (170) years, he would not be eligible for parole consideration, if the statute were applied literally, until he had served eighty-five (85) years. He maintains that if we continue to so apply this statute literally, it is unconstitutional as a denial of his rights to due process and equal protection of the law, and the disparity amounts to cruel and unusual punishment. U.S. CONST., Amends. 5, 8, and 14; KY. CONST. Sections 2 and 17. We agree.

Where a statutory distinction, such as this one, is challenged under the federal equal protection clause, the court should determine "whether the challenged distinction rationally furthers some legitimate, articulated state purpose." *McGinnis v. Royster*, 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973). The appellant insists that there is no legitimate purpose furthered by the distinction between KRS 439.3401(2) violent offenders and KRS 439.-3401(3) violent offenders, and the disparate treatment of these two groups is therefore arbitrary and capricious.

Due process requires that a statutory classification have a reasonable basis. The appellant argues that it is unreasonable to impose a sentence for a term of years which carries a minimum parole eligibility far in excess of a life sentence. Our court has recognized that it was the intent of the General Assembly that life imprisonment is a "penalty equal to or greater than any sentence to a term of years." *Smith v. Commonwealth*, Ky., 806 S.W.2d 647 (1991). In *Smith*, the Court determined that the trial court improperly modified a jury sentence from two terms of life imprisonment to two consecutive twenty-five-year terms, because a literal application of subsection (3) of the violent offender statute resulted in a greater parole ineligibility for the term of years sentence than would have been the case with the life sentence. In this writer's dissent, *Id.* at 648, it was

pointed out that the disparity could be avoided by interpreting subsection (2) of the statute as providing a twelve-year "cap or ceiling" on parole ineligibility (that prescribed for life imprisonment—the longest term which anyone could serve). Thus, in harmonizing this interpretation with the requirement of serving at least 50% of a sentence to a term of years before parole eligibility as set out in subsection (3), we need only conclude that the intention of the legislature was to require service of 50% of a term of years or twelve (12) years, *whichever is less*, before parole eligibility. We now so interpret subsections (2) and (3) of KRS 439.3401 and direct that such an application be followed in determining minimum parole eligibility of those "violent offenders" who committed offenses after July 15, 1986, and are therefore subject to the statute as directed by the General Assembly.

In so interpreting KRS 439.3401, we avoid the evils of denial of equal protection and failure of due process which otherwise result from a literal interpretation thereof, and uphold the constitutionality of the statute as we did in *Huff v. Commonwealth*, Ky., 763 S.W.2d 106 (1989).

We would further observe that our interpretation and application herein of the violent offender statute keeps it from conflicting with KRS 532.110(1)(c) which provides:

> The aggregate of consecutive indeterminate terms shall not exceed in maximum length the longest extended term which would be authorized by KRS 532.-080 for the highest class of crime for which any of the sentences is imposed.

In further support of our interpretation herein, we invite examination of KRS 532.-030(1), which lists the punishments authorized for one convicted of a capital offense:

> When a person is convicted of a capital offense he shall have his punishment fixed at death, or at a term of imprisonment for life without benefit of probation or parole until he has served a minimum of twenty-five (25) years of his sentence, or to a sentence of life, or to a term of not less than twenty (20) years.

This section makes it apparent that even one found guilty of a capital offense but spared the death penalty could be considered for parole after serving only twenty-five (25) years if sentenced to the second most severe authorized punishment. This being true, how can anyone argue logically that the General Assembly intended under subsection (3) of the violent offender statute to authorize parole ineligibility for unlimited numbers of years so long as the number is only 50% of a sentence of years? This case is a perfect illustration of how absurd such an interpretation of the statute really is. If we were to hold that the appellant could not be considered for parole until he had served eighty-five (85) years, or 50% of his sentence of imprisonment for one hundred and seventy (170) years, we would be requiring service of sixty (60) years *more* than one would be required to serve on a sentence to life without parole for twenty-five (25) years upon conviction of a *capital offense.*

We said in *Hampton v. Commonwealth*, Ky., 666 S.W.2d 737 (1984), that no aggregate sentence to a term of years could exceed a life sentence. Our interpretation today of KRS 439.3401 is but a restatement and reinforcement of that pronouncement. The decision of the General Assembly selecting a maximum period of twelve years for one to be ineligible for parole when serving a life sentence is now properly extended to those serving terms of years.

The appellant raises three additional issues which we determine are without merit. First, he claims that his 1986 guilty pleas should not have been admitted since the plea form was unusually worded. It is nevertheless clear from the record that the pleas were "intelligent and voluntary" as required by *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Further the appellant contends that the trial judge should have recused himself from this case since he presided over such guilty plea proceedings. Yet no motion to disqualify was filed and there was no showing that a failure to recuse was palpable error.

█ Finally, the appellant claims that the trial court erred in admitting evidence of his juvenile convictions during the PFO

phase of his trial pursuant to KRS 532.080. While it is true that that statute makes no provisions for the introduction of such evidence, it is also true that KRS 532.055, setting out the procedure for the sentencing hearing in felony cases, authorizes evidence of all "prior convictions." Further, this statute specifically mandates that the sentencing hearing shall be combined with the PFO hearing. Consequently, the trial court did not err.

The judgment and sentence of the Daviess Circuit Court are hereby affirmed.

STEPHENS, C.J., and COMBS, LAMBERT and REYNOLDS, JJ., concur.

LEIBSON and WINTERSHEIMER, JJ., concur in part and dissent in part by separate opinions.

LEIBSON, Justice, concurring in part/dissenting in part.

I concur in the major portion of the Majority Opinion, which rationally construes the otherwise incoherent parole eligibility terms specified in subsections (2) and (3) of KRS 439.3401. We "conclude that the intention of the legislature was to require service of 50% of a term of years or twelve (12) years, *whichever is less*, before parole eligibility." Since I have heretofore, in a number of cases, voiced vehement dissent to the arbitrary, unreasonable and constitutionally unacceptable results which have followed from a literal interpretation of these sections of the truth-in-sentencing (TIS) law, I now join the Opinion that forces a rational interpretation of these two subsections and invites the General Assembly to rewrite the statute coherently if it is dissatisfied with the result.

Nevertheless, respectfully, I must dissent in part from the Majority Opinion because it affirms the decision of the trial court to admit, during the penalty phase of the trial, evidence of convictions of the appellant for offenses committed while he was a juvenile. When, as here, the defendant is tried as a persistent felony offender (PFO), a critical portion of the penalty phase is the conviction and enhancement of the penalty for the underlying offense un-

der the PFO statute, KRS 532.080. Under the PFO statute juvenile convictions are expressly and specifically *excluded* from consideration.

KRS 532.080(2) provides in pertinent part:

"As used in this provision, a previous felony conviction is a conviction of a felony in this state or conviction of a crime in any other jurisdiction provided:

. . . .

(b) That the offender was over the age of eighteen (18) years at the time the offense was committed[.]"

Of course, in KRS 532.055(2)(a)2., the TIS statute purports to permit, without limitation, evidence of "prior offenses for which [the defendant] was convicted," and of course KRS 532.055 further provides in subsection (3) that "hearings held pursuant to this section shall be combined with any hearing provided for by KRS 532.080," the PFO statute. But it should be obvious that a sharp conflict exists if, contrary to the PFO statute, evidence of juvenile convictions is admitted, albeit such evidence may be appropriate under the TIS statute to fixing the sentence on the underlying charge. It is inevitable that such evidence will result in a *double enhancement*. A decent respect for elementary fairness recognizes that a jury, having heard evidence of juvenile convictions, will be influenced not only to increase the punishment for the underlying offense, which, perhaps, the TIS statute intends, but also to increase the enhanced penalty which follows after the PFO conviction, which the PFO statute expressly prohibits.

The briefs do not suggest that here the jury was advised to consider the juvenile convictions only in fixing the penalty for the underlying offense, and to disregard these convictions in fixing the enhanced penalty as a PFO offender. However, it is hardly likely that such an admonition would accomplish its purpose in any event.

It has always been the law that if statutes are in conflict, the specific should overrule the general. Here the PFO statute is specific and the TIS statute is general. It has always been the law that if there

is any ambiguity about the proper procedure in a criminal case, the statutes should be interpreted so as to apply the rule of lenity. *See Roney v. Commonwealth*, Ky., 695 S.W.2d 863 (1985); *Boulder v. Commonwealth*, Ky., 610 S.W.2d 615 (1980). Our decision disregards both of these principles. The sentencing under the PFO statute is tainted by the evidence which the Commonwealth has offered under the pretext that it conforms to the TIS statute. We should not permit this result in the present case, or in similar cases.

The sentencing portion of the case should be reversed on this ground.

WINTERSHEIMER, Justice, concurring in part and dissenting in part.

I concur with that part of the majority opinion which affirms the conviction and sentence. However, I must respectfully dissent from that part of the opinion which interprets K.R.S. 439.3401. The instructions given to the jury by the trial court were correct and followed the direction of this Court as announced in *Huff v. Commonwealth*, Ky., 763 S.W.2d 106 (1989).

*Huff, supra*, held that K.R.S. 439.3401 was constitutional because any parole eligibility disparity resulting from the application of the statute did not render it unconstitutionally vague or arbitrary. *Huff* recognized that it was a prerogative of the legislature to designate classifications for crimes and to provide a minimum time for service of any sentence imposed before there was an opportunity for parole eligibility. As noted in *Huff*, and as present here, the entire attack on the statute is based on the possible disparity in sentencing which might occur in regard to the minimum for parole eligibility.

Chapter 439 relates to probation and parole. K.R.S. 439.3401 creates the classification of violent offender and defines that term. Sanders argues that in the context of other sentencing statutes and holdings of this Court that the statute has denied him due process and equal protection of the law on the basis of proportionality.

When an equal protection issue is raised, the reviewing court must consider whether the subject statute has a rational basis which furthers some legitimate articulated State purpose. *McGinnis v. Royster*, 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973).

It is easy to argue that there is need for clarification of this Court's decision in *Berry v. Commonwealth*, Ky., 782 S.W.2d 625 (1990) and *Offutt v. Commonwealth*, Ky., 799 S.W.2d 815 (1990). However, I believe the solution offered by the majority is not correct. There may be some disorder in the sentencing system, but it does not amount to ambiguity so as to deceive the violator or amount to a constitutional deprivation of either equal protection or due process. It could be argued that those who violate the law must run some risks in regard to what they believe to be the opportunities for parole eligibility. Certainly the current system requires some explanation to juries but it cannot be so burdensome when compared to the remedy announced by the majority in this case.

Parole is an executive function, not a judicial one. Parole is administered by the parole board which is an autonomous body pursuant to K.R.S. 439.320. The actual length of imprisonment has always been determined by the parole board and nothing in the majority opinion changes that situation. Any explanation to the jury must include such an analysis. The progressive decision of this Court in *Commonwealth v. Reneer*, Ky., 734 S.W.2d 794 (1987) is not subject to any collateral attack simply because a brief explanation of the complete truth in sentencing should be given. Sentencing always involves something of a legal mystery to most lay people who serve on juries and every effort must be made to assure that the jury will fully understand their responsibilities.

It has always been the responsibility of this Court to harmonize statutes which appear to be in conflict. Such reconciliation should follow the intent of the legislature. In this case, the clear intent of the General Assembly was to punish violators of violent crimes with longer sentences by restricting

the time in which parole eligibility could be achieved. K.R.S. 532.100 and K.R.S. 532.-030 are earlier statutes and it is clear that the legislature recognized the ineffectiveness of such statutes to control crime of a violent nature when it enacted the more recent law.

It has been said that it is advisable for the jury to have as much information before it as possible when making sentencing decisions. *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) and *Huff*.

Certainly, any jury would expect a life sentence to mean life. The parole system now means that there is eligibility for release within twelve years, regardless of the nature of the crime. The classification of offenses is solely in the hands of the legislature just as is the imposition of penalties. Although it is totally unintentional, I believe that the majority has invaded the proper province of the General Assembly in resolving the situation.