Leroy **FRYREAR**, Daniel Jones, Charles McDonald, William Sloan, Robert Eugene Smith, Earl Stover, Willie A. Tinsley, Appellants,

v.

Phil **PARKER**, Warden Kentucky State Penitentiary, Appellee.

No. 94–SC–539–DG.

Supreme Court of Kentucky.

Jan. 18, 1996.

Rehearing Denied May 23, 1996.

Allison Connelly, Public Advocate, Frankfort, William Burkhead, Hank Eddy, Assistant Public Advocates, James E. Story, Eddyville, for appellants.

Chris Gorman, Attorney General, Pamela J. Murphy, Assistant Attorney General, David A. Smith, David E. Spenard, Criminal Appellate Division, Office of Attorney General, Frankfort, Lloyd E. Spear, Vanceburg, Angela M. Ford, General Counsel, Cabinet for Human Resources, Department of Law, Frankfort, for appellee.

EDWIN I. BAER, Special Justice.

Prior to January 1, 1975, the seven appellants were convicted of rape and sentenced to the then correct statutory sentence for the crime, life without parole. The legislature of the Commonwealth of Kentucky subsequently enacted the 1975 penal code which amended the applicable sentencing statute to eliminate the phrase "without parole."

Appellants brought this habeas corpus action in Lyon Circuit Court. Lyon County is the geographical home of the penal institution housing the appellants and therefore the jurisdictional home for any habeas corpus writ they might seek. It is the contention of the appellants that their continued incarceration without the right to apply for parole is violative of the 5th, 8th, and 14th Amendments to the United States Constitution and Sections 3 and 17 of the Kentucky Constitution.

The Lyon Circuit Court granted the petition for writ of habeas corpus and ordered the appellants' sentences commuted to life. The Court of Appeals reversed, reasoning that the appellants were not entitled to habeas corpus relief under KRS 419.020 because they were not asserting a right to release from custody. For the following reasons, we affirm the Court of Appeals.

At the habeas corpus hearing, the appellants produced proof through statistical surveys that a great majority of those convicted for the same degree of rape, both before and after January 1, 1975, have since been released by parole or executive commutation of their sentences. The seven named appellants (and one prisoner housed in a different penal institution) are the only persons convicted of this specific crime who remain in custody with no right to apply for parole.

The appellants do not seek relief from the imposed punishment because of any trial error (such has been disposed of long ago in prior litigation and appeals). They contend that, "Due to the passage of time, changes in the law and circumstances, their punishment has become unconstitutional." They ask for exceptional and extraordinary relief. To grant the remedy they seek, the Court must by judicial fiat amend the statute, giving it retroactive application. In other words, the Court must do what the legislature did not see fit to do.

The core issue of this case, the constitutionality of the appellants being deprived of the right to seek parole, is compelling. The appellants' belief that their treatment is unfair is understandable, but no more so than the indignation evidenced by their victims through the briefs submitted in their behalf by the Amici Curiae. However, before we can reach any constitutional issue, there is a threshold issue of equal importance and one shadowed by potential consequences: Is a petition for a writ of habeas corpus the correct procedure to seek relief under the circumstances of this case, and if not, is the use of such procedure fatal to the action?

The Court of Appeals, in a unanimous decision, held that a writ of habeas corpus is not the correct procedure and remanded the case to Lyon Circuit Court with directions to dismiss the petition. The Court of Appeals found that to be entitled to a writ of habeas corpus, the petitioner must be seeking immediate release from custody, and, since the relief they requested was merely to be allowed to apply for parole, they were not entitled to relief by way of the writ. The appellants contend the ruling of the Court of Appeals is "far too narrow and restrictive." The question demands our attention to the background of the famous, sometimes romantic, and generally not understood writ.

The Kentucky Constitution, Section 16, provides for the retention of the ancient writ. The form and substance of the constitutional direction is embodied in KRS 419.020:

The writ of habeas corpus shall be issued upon petition on behalf of anyone showing by affidavit probable cause that he is being detained without lawful authority....

"[D]etained without lawful authority" is the key phrase, the meaning of which controls the decision in this case. There is a second provision in the statute concerning the right to bail but that provision is not relevant to this appeal.

The appellants refer to the case of *Walters v. Smith*, Ky., 599 S.W.2d 164 (1980), in which there is a hint of comfort for their

position. The case involved a prisoner who was paroled pending appeal, hence he was not in prison when the writ was heard. He was not in actual physical custody. The court, however, likened a person on parole as being "detained," because:

> KRS 439.348 places paroled prisoners under the supervision of the Bureau of Corrections "subject to its directions" for the duration of the parole period.... Suffice it to say, however, that the bureau has the authority to apply constraints on his "liberty to go where [he] will," as is expressed in the English cases, and that is enough to support habeas corpus jurisdiction. *Id.* at 165.

The point of the case is that the status of parole is as much a state of "being detained," as is being confined to prison. The success of the writ must terminate immediately the status of "being detained."

Less applicable is *Department of Public Welfare of Kentucky v. Polsgrove*, 245 Ky. 159, 53 S.W.2d 341 (1932), because, even though the case states the sentences of the prisoners were longer than allowed by statute, this was a matter that should have been addressed on appeal. The sentences were valid to the extent allowed by the statute, and because the prisoners had not served the maximum statutory time, were not eligible for immediate release and therefore it was ordered that the petition for the writ be dismissed.

*Commonwealth v. Hayes*, Ky., 734 S.W.2d 467 (1987), does approve of the writ or CR 60.02 for circumstances subsequent to the judgment. However, Mr. Hayes, if successful, would have had his freedom from the particular judgment at issue. Similarly, each of the other Kentucky cases cited do not reach the plane of determinative analogy necessary to apply their results to this appeal.

The appellants' cite from the Supreme Court of the United States contains language praising the writ and protecting its survival as a necessary tool to protect against injustice, and the same is true of some Kentucky cases, including one which will be discussed later in this opinion. This Court has equal respect for the writ and understands the need for its survival, but believes that over-

use and abuse of the writ places it more in harm's way than does the failure to allow its use without scrutinizing the necessity for it.

█ There is danger in placing such stress on semantics that the honest meaning and usage of words become secondary to frivolous distinctions. However, the science of languages has important uses and purposes, one of which is to allow our thoughts to be transferred to another so that what is meant is understood by the teller and the listener. Exactness makes for understanding. This is one problem with the study of Kentucky's statutory preservation of the writ of habeas corpus. Lawyers, judges, even legal scholars often use the term *detain* as synonymous with *restrain*. An example is in *Griffith v. Schultz*, Ky., 609 S.W.2d 125, 126 (1980): "The writ of habeas corpus is a constitutional protection against illegal restraint, its purpose being to regain liberty of a person who is being illegally restrained." Of course, the question of the use of the writ was moot because the petitioner had already gained his liberty. The differences may be subtle but they are significant. The various standard dictionaries and Black's Law Dictionary place a more restricted meaning on the word "detain," generally requiring physical custody, or the imposition of such obstructions as may be equivalent to physical custody. "Restrain," on the other hand, is to have some limitations placed upon the person, to be limited in some manner less harsh and punishing. This not a hair splitting distinction but a means of placing parameters on a phrase which might otherwise become an expedient tool to harass authority and subvert justice.

The case of *Commonwealth v. Marcum*, Ky., 873 S.W.2d 207 (1994), is a well reasoned and studious examination of the writ of habeas corpus. The appellants and appellee have relied upon its language and its results. Mr. Marcum was in prison under a judgment which was a "nullity." The trial court had entered an order setting Mr. Marcum's sentence after the trial court had lost jurisdiction of the case and, therefore, the authority to enter any order. Mr. Marcum chose to use the writ as a means of gaining his liberty

from the judgment which was a nullity. The record of the case, without any outside proof, contained all that was necessary to demonstrate the need for relief. The Commonwealth contended that RCr 11.42 was the appropriate method to use, claiming that "the handful of circuit courts with geographical responsibility for incarceration facilities would be overwhelmed if prisoners in these facilities may collaterally attack the judgments of imprisonment by writ of habeas corpus...." *Id.* at 210. By going back to the trial court, where the case originated, the Commonwealth argued, we spread the burden of attending to this form of justice.

The Court acknowledged the problem but determined there must be a balance between the need of the Commonwealth for orderly procedure and the prisoner's right to an expeditious release when it is *patently obvious he is being unlawfully detained.*

The Court in *Marcum* took special care to remind us that habeas corpus is a fundamental right and that the Kentucky Constitution takes particular care that it be preserved. We cannot refuse its use without very careful thought and deliberation. "Where the writ would apply, the rule can only substitute...." *Id.* at 210. In Mr. Marcum's case, he was asking for immediate release from custody, or, if you will, from being detained unlawfully. In this case, the appellants ask only the right to seek a means of obtaining their release in the future. They are not prevented from applying for parole by reason of their being in custody. In fact, they could request parole. It would simply be a futile act.

Additionally, and perhaps more persuasively, it was patently obvious in Mr. Marcum's case that he was being unlawfully detained. Here, the record gives no such indication, patent or otherwise. The proof before the Lyon Circuit court was made up of the testimony of the appellants, basically self-serving, and a statistical survey that could be helpful though not determinative of what direction the court might take.

In the current case, the balancing of rights falls more favorably to the Commonwealth's position. A new element enters the equation. Community standards do not grow in only one direction, or involve only one part of the community. Coming into bloom are victims' rights. Although victims may have limited standing, they deserve, at the very least, the right to be there, to see and hear what is going on. Returning the venue of the hearing on the issue to the county where the cause originated (with the possible exception of those few instances where there has been a change of venue)· affords victims this minimal right. Add this to the possibility of inundating the courts of the counties containing penal institutions and the balance falls to the side of the Commonwealth in this case.

Do we do injury to Section 17 of the Kentucky Constitution? Do we dishonor the venerable writ of habeas corpus? No in each instance, not if we provide a fair and reasonable means of seeking such relief as the appellants want. In this case, the appropriate procedure is found in CR 60.02. It is set out in the rule:

> On motion, a court may, upon such terms as are just, relieve a party or his legal representative from its final judgment, order, or proceeding upon the following grounds ... (e) the judgment is void or has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or **it is no longer equitable that the judgment should have prospective application; or (f) any other reason of an extraordinary nature justifying relief.** [Emphasis added.]·

This rule embodies the heart and soul of the writ of habeas corpus and only differs in its geographical application and possibly the fact that it is less summary in nature. Summary disposition is indispensable where an outrage is obvious and formality needs to be stripped away. Such is not the status of this case. In fact, it may be in the best interest of the appellants that there be a more formal hearing, considering that this will give them an opportunity to bolster the sketchy proof they provided and by which they ask extraordinary relief.

Should the appellants choose to pursue CR 60.02 relief, an issue of timeliness may be raised. The rule calls for such motion to be

made within a reasonable time. Although this Court makes no determination of the ultimate issue, and none should be read in any part of this opinion, the Court has determined that if application is made expeditiously after the opinion of this Court is made final, it shall be deemed timely.

The order of the Court of Appeals is affirmed.

STEPHENS, C.J., and LAMBERT and GRAVES, JJ., concur.

WINTERSHEIMER and REYNOLDS, JJ., concur in result only.

STUMBO, J., dissents.