**Harold McQUEEN, Jr., Appellant,**

v.

**Philip PARKER, in his official capacity as Warden of the Kentucky State Penitentiary, and Doug Sapp, in his official capacity as Commissioner of the Kentucky Department of Corrections, Appellees.**

No. 97–SC–517–MR.

Supreme Court of Kentucky.

June 30, 1997.

David A. Friedman, Carl L. Wedekind, Jr., American Civil Liberties Union of Kentucky, Louisville, for Appellant.

A.B. Chandler, III, Attorney General, David A. Smith, Assistant Attorney General, Frankfort, for Appellee.

## OPINION AND ORDER

This cause comes before the Court on motion of appellant Harold McQueen, Jr., for interlocutory relief prior to entry of a final judgment. CR 65.07. In the court below, injunctive relief in the form of a stay of execution was denied, and inasmuch as the underlying issue concerns imposition of the death penalty, review of the trial court's interlocutory order in this Court is proper. *Skaggs v. Commonwealth*, Ky., 803 S.W.2d 573, 577 (1990).

Appellant is scheduled to die by means of electrocution pursuant to KRS 431.220 before sunrise on Tuesday, July 1, 1997. In this action he challenges the constitutionality of electrocution as the means of execution contending that such means violates Section 17 of the Constitution of Kentucky which proscribes infliction of cruel punishment. We note that a similar claim based on the Eighth and Fourteenth Amendments to the Constitution of the United States was brought in the United States District Court for the Western District of Kentucky and that said claim is now on review before the United States Court of Appeals for the Sixth Circuit.

On a number of prior occasions this Court has considered whether electrocution as the means of capital punishment violates Section 17 of the Constitution of Kentucky. We have held that it does not. *Foley v. Commonwealth*, Ky. 942 S.W.2d 876 (1996); *Bowling v. Commonwealth*, Ky., 942 S.W.2d 293 (1997); *Perdue v. Commonwealth*, Ky., 916 S.W.2d 148 (1995); *Bowling v. Commonwealth*, Ky., 873 S.W.2d 175 (1993); *Sanders v. Commonwealth*, Ky., 801 S.W.2d 665 (1990); and *Smith v. Commonwealth*, Ky., 734 S.W.2d 437 (1987). While our decisions

in this regard may not preclude reconsideration of this issue with a properly developed record, in this case, the precedential value of the decisions cited hereinabove is sufficient to sustain the constitutionality of the statute. We note that in other jurisdictions, in cases where the record was fully developed, arguments similar to the one appellant makes here have been rejected. *Sawyer v. Whitley,* 772 F.Supp. 297 (E.D.La., 1991); *Thomas v. Jones,* 742 F.Supp. 598 (S.D.Ala., 1990).

■ This is the third death warrant signed by a Governor of Kentucky commanding appellant's execution. He was sentenced to die by the statutory means by judgment entered on April 8, 1981. On direct appeal, the final judgment was affirmed on February 16, 1984. We will refrain from further summarizing the procedural history of this case and merely observe that for a great period of time the fact of appellant's execution by means of electrocution has been known to him. For appellant to have waited until less than two weeks prior to the date of his execution to assert the claim herein suggests purposeful delay. *Gomez v. U.S. District Court,* 503 U.S. 653, 112 S.Ct. 1652, 118 L.Ed.2d 293 (1992). Less than two weeks before his scheduled execution, appellant has brought a claim which he contends requires an exhaustive hearing on the physiology of death by electrocution with emphasis on pain which may be associated therewith. He proposes to produce the testimony of expert witnesses who will support his contention. In our view, such a claim must be brought in time for the Court of Justice to consider it in an orderly manner without further delaying enforcement of the judgment. Particularly is this so in light of our prior rejection of constitutional challenges to capital punishment by electrocution. Appellant's claim was not timely brought.

Appellant further claims that evolving standards of decency render electrocution constitutionally impermissible. He points to the fact that a number of states have in recent years adopted lethal injection as their means of imposition of the death penalty, and the fact that a bill is currently pending before the Kentucky General Assembly which would grant condemned persons the right to elect lethal injection rather than electrocution. While such a legislative trend does appear to exist, electrocution has by no means been eliminated by all or even substantially all of the states. Moreover, the Kentucky General Assembly, the final arbiter of public policy in this State, has not seen fit to abolish electrocution or even authorize some alternative means. Appropriate judicial restraint suggests that on this question of public policy, we defer to the General Assembly. Particularly is such deference appropriate in view of the long-standing acceptance in this state and nation of electrocution as the means of capital punishment. *Ex Parte Kemmler,* 136 U.S. 436, 447, 10 S.Ct. 930, 933–34, 34 L.Ed. 519 (1890).

■ Finally, we observe that the claim appellant makes here has been previously before this Court. In his direct appeal, appellant raised the question of cruel punishment pursuant to Section 17 of the Constitution of Kentucky and asserted that whether electrocution was cruel or unusual punishment must be determined in light of societal development relying on *Workman v. Commonwealth,* Ky., 429 S.W.2d 374 (1968). While we did not directly address the issue, it was before us and we concluded the opinion by saying that issues not specifically addressed were without merit. The issue is thereby precluded. *Sedley v. City of West Buechel,* Ky., 461 S.W.2d 556 (1970).

For the foregoing reasons, appellant's motion for a stay of execution is denied.

COOPER, GRAVES, JOHNSTONE, LAMBERT and WINTERSHEIMER, JJ., concur.

STUMBO, J., dissents by separate opinion in which STEPHENS, C.J., joins.

ENTERED: June 30, 1997.

/s/ Robert F. Stephens
Chief Justice

STUMBO, Justice, dissenting.

I must dissent from this opinion and order denying Appellant the opportunity to be heard on what I consider to be a very important constitutional challenge to the use of the electric chair as the means by which he will

be executed. In the rush to see that this long-delayed execution actually takes place, we are taking refuge in the safety of precedent containing only the slightest of consideration to our own constitutional provision forbidding the imposition of cruel punishment. Ky. Const. § 17. Further, in none of the cases cited for the proposition that death by electrocution is not violative of Section 17 was there any attempt by the appellant therein to present to the trial court the type of evidence that is sought to be introduced in this case. We are taking this monumental step without the benefit of an evidentiary hearing. In so ruling, we abdicate the responsibility imposed upon us by our own oath of office: to see that both the laws enacted by the legislature and the requirements of our Kentucky Constitution are honored in the courts of this Commonwealth.

Appellant does not here challenge the imposition of the death penalty, nor does he allege in this action that his case was an inappropriate one for that sentence. His charge is that as medical science has progressed and our understanding of the pain mechanisms of the body has increased, it has become increasingly clear that death by electrocution is not always the immediate nor the pain-free process that it has been represented to be. A number of affidavits in support of Appellant's declaratory judgment action were filed and appear to represent the opinions of specialists in neurophysiology and neuropathology and the effects of electrical shock on brain function. Other specialists describe electrocution's effect on the body. Were we not faced with an imminent execution, I do not doubt that Appellant would have been granted an evidentiary hearing since he has clearly set out a colorable claim.

We reject this possibly meritorious claim because of the time at which it was filed. Yet I believe that it is only now, with the signing by the Governor of the executive order setting the date of execution, that this claim has ripened and the right to present this particular challenge is upon us. Until the death warrant was signed and a date fixed, Appellant knew only that he would at some point be executed as provided by law. His judgment does not mandate any particu-

lar means. Given the number of states that adopted alternate methods of execution as Appellant's appeals progressed in the state and federal courts, there could be no certainty that when the day did arrive, the sole means of execution in this state would still be electrocution.

As the predecessor to this Court noted in *Workman v. Commonwealth*, Ky., 429 S.W.2d 374, 377 (1968):

What constitutes cruel and unusual punishment has never been determined with any degree of exactness by the courts. The reason for this is probably because the concept changes with the continual development of society and with sociological views concerning the punishment for the crime. There is no doubt but that the courts of England in Blackstone's day would have accepted means of punishment which would be completely intolerable in our time.

An attachment to Appellant's pleading below notes that in 1981, the year that Appellant was convicted of his crimes and the judgment ordering death was entered, all executions carried out in this country were by electrocution. In the years since, the percentage has steadily declined, with lethal injection becoming the preferred method. Why this is so cannot be said with any certainty without the use of an evidentiary hearing. Something has changed in society's attitudes toward the electric chair and that should be investigated. This, of course, is why today's order is so very wrong in finding that this issue is precluded by its having been raised in the direct appeal. By its very terms, *Workman* mandated the result reached at the time of Appellant's conviction. Under *Workman*, we do not examine the means of punishment by what was deemed appropriate when the punishment was selected and imposed; rather, we look to see whether a colorable case can be made that it is likely that society's views on this method of execution have changed. An evidentiary hearing to explore this issue should be held before the imposition of this most final and irrevocable of penalties is imposed.

I take little comfort in the fact that this sort of challenge has been rejected by a few

other courts after the consideration of expert testimony of the type Appellant seeks to introduce. Those jurisdictions are not Kentucky and may not have the rich tradition of zealously guarding the protections provided by our own Constitution. *See Commonwealth v. Wasson,* Ky., 842 S.W.2d 487 (1992). As Chief Justice Stephens so eloquently stated:

> The judiciary has the ultimate power, and the duty, to apply, interpret, define, construe all words, phrases, sentences and sections of the Kentucky Constitution as necessitated by the controversies before it. It is *solely* the function of the judiciary to so do. This duty must be exercised even when such action serves as a check on the activities of another branch of government or when the court's view of the constitution is contrary to that of other branches, or even that of the public.

*Rose v. Council for Better Educ., Inc.,* Ky., 790 S.W.2d 186, 209 (1989).

Unlike the majority, I would not leave to a federal court in Louisiana or Alabama an issue that is solely the prerogative of this Court. I would grant the stay, reverse and remand to the Lyon Circuit Court for a full evidentiary hearing so that this case can be considered in the orderly manner so desired by the majority opinion.

STEPHENS, C.J., joins in this dissent.