**Michael A. LAND, Appellant,**

v.

**COMMONWEALTH of Kentucky,
Appellee.**

No. 98–SC–000427–TG.

Supreme Court of Kentucky.

Feb. 18, 1999.

Donna L. Boyce, Appellate Branch Manager, Department of Public Advocacy, Frankfort, Allison Connelly, Assistant Professor of Law, Lexington, for appellant.

A.B. Chandler, III, Attorney General, Ian G. Sonego, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, for appellee.

GRAVES, Justice.

In 1972, Appellant, Michael A. Land, was convicted and sentenced to life imprisonment for one count of murder, life without the possibility of parole on each of two counts of rape, twenty-one years on each of two counts of shooting with the intent to kill, and eighteen years for one count of armed robbery.

The record reveals the disturbing sequence of events which ultimately led to Appellant's convictions. On the evening of September 4, 1971, while armed with a shotgun, Appellant forced Connie Lou Jones and Edwin Cochran Dorsey into his vehicle. He made Jones drive while he held a gun to Dorsey's head. While in the vehicle, Appellant forced the victims to remove the money from their billfolds and place it on the dashboard. When they approached the Rural Hills Bridge area, Appellant forced the victims out of the vehicle and, as Dorsey walked in front of Appellant, he pointed the shotgun at Dorsey's head and fired the weapon, killing Dorsey. Thereafter, Appellant forced Jones back into the vehicle and made her drive to Carpenter Lake in Daviess County. Appellant proceeded to assault and rape Jones before forcing her to drive back to the location of Dorsey's body. As Jones attempted to examine Dorsey, Appellant again assaulted and raped her. Appellant then forced Jones to drive to the Legion Park area where he ordered her out of the vehicle. When Jones began to run from the vehicle, Appellant shot her in the head.

Appellant did not pursue a direct appeal of his conviction. However, in 1973, Appellant filed a motion pursuant to RCr 11.42 to vacate the judgment and sentence, claiming *inter alia* that the sentence of life without the possibility of parole for rape imposed pursuant to KRS 435.090 (subsequently repealed upon the adoption of the penal code) was an unconstitutional sentence in violation of the Eighth and Fourteenth Amendments of the United States Constitution. The motion to vacate was denied by the Daviess Circuit Court, and that decision was affirmed on appeal by the former Court of Appeals.

On April 24, 1997, Appellant filed a motion under CR 60.02 to amend the judgment or to make him eligible for parole. Again, Appellant challenges the constitutionality of his sentence for the rape convictions. The Daviess Circuit Court denied the motion without an evidentiary hearing and Appellant appealed to the Court of Appeals. The Court of Appeals recommended transfer which this Court granted.

■ Appellant argues that his sentence for the crime of rape should be amended to a sentence of life with the eligibility of parole. He urges that not only is his current sentence inequitable under CR 60.02(e) and (f), but due to the passage of time, as well as changes in the law, his punishment has become unconstitutional under both the United States and Kentucky Constitutions. Appellant points out that only fifty-five other defendants have ever received a sentence of life without the possibility of parole for the offense of rape in this Commonwealth, and of those, forty-five have had their sentences commuted to life and have been paroled.

Appellant asserts that two notable changes in the law require this Court to revisit previous constitutional challenges and reexamine case precedent established over a decade ago in light of today's "standards of decency." *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958). First, the adoption of the penal code in 1975 by the Kentucky General Assembly abolished the sentence of life without the possibility of parole for the offense of rape. Appellant urges that this change resulted from society's recognition that "such an irrevocable penalty did not fit the crime ."

Second, in *Sanders v. Commonwealth*, Ky., 844 S.W.2d 391 (1992), this Court held that requiring a rapist to serve eighty-five years before becoming eligible for parole was cruel and unusual punishment which violated the Fifth, Eighth and Fourteenth Amendments to the United States Constitution, as well as Sections Two and Seventeen of the Kentucky Constitution. *Id.* at 393. Appellant concludes that given the changes in sentencing laws regarding crimes of violence, and in view of the commutation of the sentences of almost all other offenders sentenced. to life without the possibility of parole for rape, his sentence must be deemed cruel punishment and a denial of equal protection and due process in violation of the United States and Kentucky Constitutions. We disagree.

On several occasions this Court has addressed the constitutionality of a sentence of life without the possibility of parole for rape authorized by the former KRS 435.090. As noted by Appellant in his brief, the decision in *Workman v. Commonwealth*, Ky., 429 S.W.2d 374 (1968), held that the imposition of life without the possibility of parole for rape was unconstitutional when imposed upon a juvenile, and questioned the logic of authorizing such a sentence for a rape conviction but not for a murder conviction. *Id.* at 377. However, the opinion specifically upheld the validity of imposing such a sentence upon an adult offender. *Id.* Moreover, in cases subsequent to *Workman,* the Court has consistently held that the sentence of life without the possibility of parole for rape imposed prior to the institution of the penal code is constitutional. *McDonald v. Commonwealth,* Ky., 569 S.W.2d 134 (1978), *cert. denied,* 439 U.S. 1119, 99 S.Ct. 1028, 59 L.Ed.2d 79 (1979); *Green v. Commonwealth,* Ky., 556 S.W.2d 684 (1977); and *Fryrear v. Commonwealth,* Ky., 507 S.W.2d 144 (1974). Both *McDonald* and *Green* were decided after the adoption of the penal code, which removed the authorization of a sentence of life without the possibility of parole for any offense.[1]

---

1. Effective July 15, 1998, the legislature reinstated a sentence of life without the possibility of

The Sixth Circuit has also rejected the argument that the sentence of life imprisonment without the possibility of parole imposed under the former law violated the federal constitution. *Moore v. Cowan*, 560 F.2d 1298 (6th Cir.1977), *cert. denied*, 435 U.S. 929, 98 S.Ct. 1500, 55 L.Ed.2d 525 and 436 U.S. 960, 98 S.Ct. 3079, 57 L.Ed.2d 1127 (1978).

Appellant's reliance on *Sanders v. Commonwealth*, Ky., 844 S.W.2d 391 (1992) is misplaced. The *Sanders* decision did nothing more than invalidate part of the violent offender statute, KRS 439.340, to the extent that the statute imposed a maximum period of parole ineligibility of twelve years for a life sentence, but specified a parole ineligibility period of fifty percent of the sentence for a term of years. *Id.* at 394. Thus, this Court held that a defendant sentenced to an aggregate term of years must be eligible for parole after a period of twelve years, just as any defendant serving a life sentence with the possibility of parole. *Id.*

■ Kentucky courts have repeatedly held that there is no constitutional right to parole, but rather parole is a matter of legislative grace or executive clemency.[2] *Fowler v. Black*, Ky., 364 S.W.2d 164 (1963); *Belcher v. Kentucky Parole Board*, Ky .App., 917 S.W.2d 584 (1996); *Lynch v. Wingo*, Ky.App., 425 S.W.2d 573 (1968). Parole is simply a privilege and the denial of such has no constitutional implications. *Morris v. Wingo*, Ky., 428 S.W.2d 765 (1968); *Tiryung v. Commonwealth*, Ky.App., 717 S.W.2d 503 (1986).

■ Appellant also argues that the trial court erred in failing to hold an evidentiary hearing on his CR 60.02 motion. Although Appellant concedes that he did not request a hearing, he contends that the failure to conduct such constitutes palpable error which affects his substantial rights. RCr 10.26. Appellant relies on this Court's decision in *Fryrear v. Parker*, Ky., 920 S.W.2d 519 (1996). In *Fryrear*, the other seven inmates who are also currently serving sentences of life without the possibility of parole for rape

challenged the constitutionality of the sentence by way of a petition for a writ of habeas corpus. In an opinion written by a Special Justice, this Court held that the issue was "compelling," but that it should have been presented in a CR 60.02 motion instead of a writ of habeas corpus. *Id.* at 522. However, contrary to Appellant's assertions, the opinion did not hold that a hearing must be held upon a subsequent CR 60.02 motion. Rather, this Court merely suggested that the defendants might benefit by requesting a more formal hearing "considering that this will give them an opportunity to bolster the sketchy proof they provided and by which they ask extraordinary relief." *Id.* We are of the opinion that this language should have put Appellant on notice to specifically request an evidentiary hearing. The decision to hold an evidentiary hearing is within the trial court's discretion and we will not disturb such absent any abuse of that discretion. *Cf. Wheeler v. Commonwealth*, Ky., 395 S.W.2d 569 (1965).

Finally, we must point out that in *McQueen v. Commonwealth*, Ky., 948 S.W.2d 415 (1997), *cert. denied*, —— U.S. ——, 117 S.Ct. 2535, 138 L.Ed.2d 1035 (1997), we reiterated that CR 60.02 is not a separate avenue of appeal to relitigate issues which were or could have been raised in a motion under RCr 11.42. *See also Gross v. Commonwealth*, Ky., 648 S.W.2d 853 (1983). The *McQueen* decision also dispelled any suggestion that *Fryrear v. Parker, supra*, represented a departure from our holding in *Gross, supra*, despite the invitation in *Fryrear* to revisit the issue via a CR 60.02 motion. Appellant did previously litigate in his unsuccessful RCr 11.42 motion the very issue he raises in this case, and presumably, that is why he did not join the other seven *Fryrear* appellants in attempting to litigate the issue in the habeas corpus proceeding. *Wingo v. Ringo*, Ky., 408 S.W.2d 469 (1966), *cert. denied*, 386 U.S. 946, 87 S.Ct. 983, 17 L.Ed.2d 876 (1967) (habeas relief unavailable to re-

---

parole as an alternative sentence in cases in which the defendant qualifies for the death penalty. KRS 532.030(1).

**2.** In 1995, Appellant filed a formal application for pardon and commutation of sentence with Governor Jones which was unsuccessful.

view matters determined adversely to petitioner in prior RCr 11.42 proceeding.)

Accordingly, we affirm the decision of the Daviess Circuit Court.

COOPER, GRAVES, JOHNSTONE, STEPHENS and WINTERSHEIMER, JJ., concur.

STUMBO, J., dissents in a separate opinion in which LAMBERT, C.J., joins.

STUMBO, Justice, dissenting.

I must dissent because I believe the continued imposition of a sentence of life without the possibility of parole for rape, which was originally imposed on Appellant in 1972, constitutes cruel and unusual punishment in violation of Sections Two and Seventeen of the Kentucky Constitution, as well as of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Although this sentence may not have offended our Commonwealth's standards of decency at the time it was imposed, I believe it does offend those standards today.

The question of what constitutes cruel and unusual punishment is not static and fixed. Rather, the prohibition against cruel and unusual punishment "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." See *Trop v. Dulles,* 356 U.S. 86, 100, 78 S.Ct. 590, 598, 2 L.Ed.2d 630, 642 (1958). "[T]he concept changes with the continual development of society and with sociological views concerning the punishment for the crime. There is no doubt but that the courts of England in Blackstone's day would have accepted means of punishment which would be completely intolerable in our time." *McQueen v. Parker,* Ky., 950 S.W.2d 226, 228 (1997) (Stumbo, J., dissenting) (quoting *Workman v. Commonwealth,* Ky., 429 S.W.2d 374, 377 (1968)).

In 1975, the Kentucky legislature abolished the sentence of life without the possibility of parole for rape. Although the legislature at that time declared that any offense committed prior to January 1, 1975, shall be punished under the provisions of the law existing at the time the offense was committed (KRS 500.040(1)), the fact that the sentence was abolished for all rape convictions after that date was the first clear indication that our changing societal standards no longer condoned the complete denial of eligibility for parole for offenders convicted of rape. The majority cites *McDonald v. Commonwealth,* Ky., 569 S.W.2d 134 (1978); *Green v. Commonwealth,* Ky., 556 S.W.2d 684 (1977); *Fryrear v. Commonwealth,* Ky., 507 S.W.2d 144 (1974); and *Workman v. Commonwealth,* Ky., 429 S.W.2d 374 (1968), for the proposition that the sentence of life without the possibility of parole for rape is constitutional. *Workman* and *Fryrear,* however, were decided prior to the abolishment of that sentence in 1975, and *Green* and *McDonald* were decided over twenty years ago. Thus, they have little bearing on today's societal standards of decency and fairness. As in *McQueen,* I remain troubled by this Court's tendency to take refuge in the safety of precedent rather than to confront the weighty issue of what constitutes cruel punishment under our current value system. See *McQueen,* 950 S.W.2d at 227–28.

Rather than looking to precedent established a generation ago, I believe this Court should turn its attention to more recent indicators of society's views on this issue, as expressed by our legislative and executive branches. Specifically, I am referring to the amended version of KRS 532.030(1), which took effect July 15, 1998, and which reinstated a sentence of life without the possibility of parole as an alternative sentence in cases in which the defendant qualifies for the death penalty. Contrary to the majority's suggestion that the enactment of this statute somehow supports the notion that our Commonwealth has once again embraced the notion that those convicted of rape may be denied the possibility of parole, I believe the statute indicates the exact opposite. The new law does *not* authorize the imposition of life without the possibility of parole for rape, but rather, authorizes that penalty for those

convicted of murder in a capital case. Although Appellant was convicted and sentenced to life imprisonment (with the possibility of parole) for the murder of Edwin Dorsey, it is not that conviction or sentence which is challenged here today. Rather, Appellant challenges the sentence imposed for his conviction of raping Connie Lou Jones. Appellant's rape of Jones was not a capital offense and thus KRS 532.030(1) would have no bearing on Appellant's case were he tried and convicted of that crime today. In fact, if Appellant were to be tried and convicted today for Jones' rape, he could not be sentenced to life without the possibility of parole.

In the process of amending KRS 532.030(1), the legislature clearly contemplated the question of which crimes merit the imposition of a sentence of life without the possibility of parole. Its decision not to reauthorize such a sentence for rape indicates that the notion is as objectionable today as it was in 1975 when that sentence was repealed. This, when combined with the fact that 45 of the 55 men ever denied the possibility of parole for the crime of rape have since had their sentences commuted to life with the possibility of parole, leads me to conclude that in the 20 years which have passed since the appropriateness of this punishment was last considered by this Court, today's standards of decency have evolved and, therefore, the sentence is no longer constitutionally sound.

LAMBERT, C.J., joins.