Bill BELCHER, Appellant,

v.

The KENTUCKY PAROLE BOARD; Helen Howard–Hughes; Joanie Abramson–Muelies; Larry Ball; Richard Brown; Chester Hager; Theodore R. Kister; and Bud Rankin, Appellees.

No. 94–CA–001267–MR.

Court of Appeals of Kentucky.

March 15, 1996.

Bill Belcher, Eddyville, pro se.

Barbara W. Jones, Justice Cabinet, Frankfort, for Appellees.

Before EMBERTON, HUDDLESTON and MILLER, JJ.

EMBERTON, Judge.

Bill Belcher appeals the April 15, 1994, order of the Lyon Circuit Court which dismissed his complaint against the Kentucky State Parole Board for failure to state a cause of action upon which relief can be granted. The complaint styled "Civil Complaint for Constitutional and Statutory Violations" was construed by the trial court as a civil rights action pursuant to 42 U.S.C. Section 1983. Belcher claimed: (1) that the Board violated Ky.Rev.Stat. (KRS) 439.340 in failing to grant him parole; (2) that the Board denied him due process by failing to give him any reasons for deferring his parole for nine months; and (3) that he was entitled to compensatory damages and injunctive relief from the Board's decision.

Belcher construes KRS 439.340 to impose a mandatory, affirmative duty upon the Board to parole all inmates who comply with the eligibility criteria set forth therein. We disagree with this interpretation. Contrary to Belcher's assertions, the statute does not, in our opinion, create a protected liberty interest in parole.

As related in *Kentucky Department of Corrections v. Thompson,* 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989):

> The types of interests that constitute "liberty" and "property" for Fourteenth Amendment purposes are not unlimited; the interest must rise to more than "an abstract need or desire," *Board of Regents v. Roth,* 408 U.S. [564], at 577, 92 S.Ct. [2701] at 2709, [33 L.Ed.2d 548 (1972)], and must be based on more than "a unilateral hope," *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 465, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158 (1981). Rather, an individual claiming a protected interest

must have a legitimate claim of entitlement to it. Protected liberty interests "may arise from two sources—the Due Process Clause itself and the laws of the States." *Hewitt v. Helms,* 459 U.S. [460] at 466, 103 S.Ct. [864] at 868, [74 L.Ed.2d 675] (1983). *Id.* 490 U.S. at 460, 109 S.Ct. at 1908.

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.... [T]he conviction, with all its procedural safeguards, has extinguished that liberty right." *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979). *See Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451; *reh'g denied,* 429 U.S. 873, 97 S.Ct. 191, 50 L.Ed.2d 155 (1976).

■ State laws or regulations create liberty interests when they place "substantive limitations on official discretion." *Kentucky Department of Corrections, supra,* at 462, 109 S.Ct. at 1909. Such limitations exist where: (1) the law or regulation establishes "substantive predicates" to guide the state's decision makers; and (2) mandatory language is used to ensure that, if the substantive predicates are present, a prescribed result will necessarily follow. *Id.* at 462–63, 109 S.Ct. at 1909–10, citing *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983). *See Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983).[1]

■ In this instance, Belcher's claim must fail. KRS 439.340 provided at the time of its application to Belcher:[2]

The board *may* release on parole such persons confined in any adult state penal

or correctional institution of Kentucky as are eligible for parole. (Emphasis added).

The statute then sets forth minimum eligibility requirements and factors relevant for consideration, and directs the Board to adopt rules and regulations for reviewing inmates for parole. The statute itself does not codify procedural due process requirements; instead, it limits and imposes restrictions upon the granting of parole.

■ The mere existence of a statutory possibility of parole does not mean the full panoply of due process required to convict and confine must be employed by the Board in deciding to deny parole and continue confinement. The Corrections Cabinet has developed a thorough procedural structure whereby the Board reviews inmates' histories to determine parole eligibility. 501 Ky.Admin.Regs. (KAR) 1:030–1:050. While the statute and regulations entitle Belcher to review, even a finding that certain relevant criteria have been met does not require the Board to release him prior to the expiration of his sentence. Nothing in the statute or the regulations mandates the granting of parole in the first instance, and nothing therein diminishes the discretionary nature of the Board's authority in such matters. *Adams v. Ferguson,* Ky., 386 S.W.2d 462 (1965); *Willard v. Ferguson,* Ky., 358 S.W.2d 516 (1962); KRS 439.310 *et seq.;* 501 KAR 1:030—1:050. The statutes and regulations at issue lack the requisite mandatory language.[3] Belcher has simply failed to demonstrate he has suffered a "grievous loss" of a liberty right retained even after sentenced to a term of imprisonment. *Sandin v. Conner,* 515 U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

■ We are aware that the *Greenholtz* court determined that the Nebraska statute

1. See footnote # 3, *infra.*

2. KRS 439.340 was later amended.

3. We are aware that the Supreme Court recently criticized the "substantive predicates" and "mandatory language" approach articulated in *Hewitt v. Helms, supra,* and followed in *Kentucky Department of Corrections, supra. See Sandin v. Conner, infra,* wherein the court related:

As this methodology took hold, no longer did inmates need to rely on a showing that they

had suffered a " 'grievous loss' " of liberty retained even after sentenced to terms of imprisonment. (citations omitted).

. . . .

By shifting the focus of the liberty interest inquiry to one based on the language of a particular regulation, and not the nature of the deprivation, the Court encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges.

*Id.* 515 U.S. at ——, 115 S.Ct. at 2298, 2299.

at issue created an expectancy of release, entitling inmates to some measure of due process. As noted, however, it was the statute's unique structure and language that made this so. Like most parole statutes, Nebraska's parole statute vests broad discretion in the Board; however, Nebraska *mandates release unless* the Board is of the opinion that release should be deferred because of the existence of one or more of the reasons set forth in the statute.[4] *Greenholtz* emphasized the scope of the interest, if any, that other state statutes intend to afford inmates must be decided on a case-by-case basis. We note that Kentucky's statute vests broad discretion in the Board and does *not employ language requiring release* absent a finding that release would be inappropriate for a specified reason. To the contrary, Kentucky's statute *prohibits parole* absent a determination that such would be in the best interest of society. *See* KRS 439.340. We concur with the trial court's view that Kentucky's statute and the regulations promulgated pursuant thereto have not elevated parole to a liberty interest in which inmates have a legitimate claim of entitlement. In Kentucky, parole is a matter of legislative grace. *Fowler v. Black*, Ky., 364 S.W.2d 164 (1963).

▪ Obviously, Belcher has a legitimate interest in a decision rendered in conformity with the established procedures and policies; one which is based upon consideration of relevant criteria. To this extent, the record reveals Belcher's "due process" rights were satisfied. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

"It is axiomatic that due process 'is flexible and calls for such procedural protections as the particular situation demands.'" *Green-*

holtz, supra, quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Flexibility is necessary to tailor the process to the particular need; the quantum and quality of the process due in a particular situation depend upon the need to serve the purpose of minimizing the risk of error. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). The legislative body in Kentucky is no doubt mindful that:

> The parole-release decision ... depends on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience with the difficult and sensitive task of evaluating the advisability of parole release. Unlike the revocation decision, there is no set of facts which, if shown, mandate a decision favorable to the individual.

*Greenholtz*, 442 U.S. at 9–10, 99 S.Ct. at 2105.

Belcher asserts that his compliance with the recommendations of a previous review Board entitled him to release upon his subsequent review. Even assuming that Belcher had, in fact, complied with the suggestions and recommendations of a previous Board, we find no authority mandating release by a subsequent Board.

▪ Additionally, Belcher contends that the Board failed to provide him with adequate reasons for its denial of parole and that such constituted a deprivation of his due process rights. We disagree. A review of the record reveals his assertion lacks merit. Among the exhibits in the record is a copy of the Board's decision outlining the reason for its action. It stated:

---

4. Nebraska's statute provides in part:

Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, *it shall order his release unless* it is of the opinion that *his release should be deferred because:*

(a) There is substantial risk that he will not conform to the conditions of parole;

(b) His release would depreciate the seriousness of his crime or promote disrespect for law;

(c) His release would have a substantially adverse effect on institutional discipline; or

(d) His continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date. Neb.Rev.Stat. § 83–1,114(1) (1976). (Emphasis added).

The statute also provides a list of 14 explicit factors and one catchall factor that the Board is obligated to consider in reaching a decision. Neb.Rev.Stat. §§ 83–1,114(2)(a)–(n) (1976). *Greenholtz*, 442 U.S. at 11, 99 S.Ct. at 2105.

The Board concluded that the resident [Belcher] is a poor parole risk and said resident has received the action recorded above [9–month deferment] for the following reasons: X seriousness of the crime. . . .

The record discloses that Belcher was afforded an opportunity to be heard and was apprised of the Board's decision and the reason for the denial of parole. Even so, due process concepts as thus far developed, do not require the Board to provide a detailed summary or specify the particular evidence on which it rests the discretionary determination that the inmate is not ready for conditional release. We concur with the view expressed in *Greenholtz* that "to require the parole authority to provide a summary of the evidence would tend to convert the process into an adversary proceeding and to equate the Board's parole-release determination with a guilt determination." *Id.* at 15–16, 99 S.Ct. at 2108.[5] In light of the record, we conclude Belcher's due process rights were satisfied and that the Board did not abuse its discretion in denying parole.

Finally, Belcher predicates his claim for monetary damages on the contention that:

When the Board denied the appellant parole at the hearing held on 11–17–93 they, the members of the Board, subjected the appellant to extreme mental anguish that, although confined solely to the mind, is nonetheless severe and cruel.

■ Inasmuch as Belcher possesses no entitlement to parole and the record clearly reflects he was afforded procedural due process, the trial court properly dismissed the action. As a matter of law he has failed to demonstrate he suffered any deprivation of rights secured by the United States Constitution or the laws of this Commonwealth. Belcher is not entitled to either monetary damages or injunctive relief. *Evans v. Thomas*, Ky., 372 S.W.2d 798 (1963); *cert. denied* 376 U.S. 934, 84 S.Ct. 705, 11 L.Ed.2d 653 (1964).

■ Moreover, the trial court properly held that the Board and its members enjoy immunity from liability in the parole decision-making process which is a quasi-judicial function requiring the exercise of discretion. As stated by the Kentucky Supreme Court in *Compton v. Romans*, Ky., 869 S.W.2d 24 (1993):

This Court has long recognized the desirability of granting certain high-ranking officials absolute immunity, not as an emolument or perquisite of office or for their personal protection, but to prevent timid, weak and vacillating performance of public duties and likewise prevent undesirable utilization of time and energy in the defense of litigation. (Citations omitted).

*Id.* at 24.

■ The scope of absolute privilege extends to cover administrative bodies in the exercise of quasi-judicial powers which they are required by statute to exercise. *McAlister & Co. v. Jenkins*, 214 Ky. 802, 284 S.W. 88 (1926).[6] *See also McCollum v. Garrett*, Ky., 880 S.W.2d 530 (1994) (absolute immunity extends to cover prosecutor acting within scope of duties imposed by law; such is a quasi-judicial function); *Compton, supra* (extended absolute immunity to Chairman of State Racing Commission); *City of Louisville v. Bergel*, Ky., 610 S.W.2d 292 (1980) (absolute immunity applied to cover deputy clerk in issuance of a warrant because it was a "judicial function"); *Duncan v. Brothers*, Ky., 344 S.W.2d 398 (1961) (extended scope of absolute immunity to include police court); *Thompson v. Huecker*, Ky.App., 559 S.W.2d 488 (1977) (absolute immunity from civil liability extended to Commissioner of the Department of Economic Security while exercising discretionary function within general scope of her authority).

Although there is neither a Kentucky case nor a United States Supreme Court case that has expressly extended absolute immunity to

5. *See* Dawson, *The Decision to Grant or Deny Parole: A Study of Parole Criteria in Law and Practice*, 1966 Wash.U.L.Q. 243, 299–300.

6. *See Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), and *Dixon v. Cooper*, 109 Ky. 29, 58 S.W. 437 (1900), for discussion regarding absolute immunity of judges acting within their jurisdiction and the concept of quasi-judicial immunity.

parole boards and members thereof, the Supreme Court has noted with approval that "federal courts have so held." *Cleavinger v. Saxner,* 474 U.S. 193, 200–01, 106 S.Ct. 496, 500, 88 L.Ed.2d 507 (1985). Officials whose responsibilities are functionally comparable to those of a judge are absolutely immune from damage liability in a 42 U.S.C. Section 1983 action. *See e.g., Buckley v. Fitzsimmons,* 509 U.S. 259, 269, 113 S.Ct. 2606, 2613, 125 L.Ed.2d 209 (1993); *Butz v. Economou,* 438 U.S. 478, 513–14, 98 S.Ct. 2894, 2914–15, 57 L.Ed.2d 895 (1978); *Forrester v. White,* 484 U.S. 219, 227–29, 108 S.Ct. 538, 544–45, 98 L.Ed.2d 555 (1988). Most circuits now hold that "parole board members are absolutely immune from suit for their decisions to grant, deny, or revoke parole." *Walrath v. United States,* 35 F.3d 277, 281 (7th Cir. 1994).[7]

In our opinion, parole board officials perform functionally comparable tasks to those of judges when they engage in the parole decision process. They are essentially performing tasks so integral or intertwined with the judicial process that they are figuratively an extension of the arm of the sentencing judge. *Butz, supra; Joseph v. Patterson,* 795 F.2d 549, 560 (6th Cir.1986), *cert. denied,* 481 U.S. 1023, 107 S.Ct. 1910, 95 L.Ed.2d 516 (1987). They have the duty to render impartial decisions in matters that evoke strong feelings because an individual's freedom is at stake. Absolute immunity from civil suits is extended to judges in an attempt to keep the judicial decision-making process clean.

When a judge weighs the merits of a case, the scales should not be tipped by fear of litigation. The same reasoning compels us to afford like protection to the decision-making process of parole board officials. If board members were in constant fear of litigation following each rejection of a parole application, "their already difficult task of balancing the risk involved in releasing a prisoner whose rehabilitation is uncertain against the public's right to safety would become almost impossible." *Sellars v. Procunier,* 641 F.2d 1295, 1303 (9th Cir.) *cert. denied,* 454 U.S. 1102, 102 S.Ct. 678, 70 L.Ed.2d 644 (1981).

Thus, we conclude that the Board and its members were performing a quasi-judicial function when they denied Belcher parole following his November 17, 1993, hearing; consequently, they are accorded absolute immunity from civil liability.

Based on common law precedent, the public policy of Kentucky, authority of the United States Supreme Court, and for all the foregoing reasons, the order of the Lyon Circuit Court is affirmed.

All concur.

---

**7.** *Walrath* provides a detailed analysis of absolute immunity of parole board members. Although *Walrath* involved a federal parole board, the Supreme Court has held that "there is no basis for according to federal officials a higher degree of immunity from liability when sued for a constitutional infringement ... than is accorded state officials when sued for the identical violation under § 1983." *Butz, supra,* 438 U.S. at 500, 98 S.Ct. at 2907.