Tracy STEWART, Appellant,

v.

COMMONWEALTH OF KENTUCKY, Appellee.

No. 2003–SC–0359–DG.

Supreme Court of Kentucky.

Jan. 20, 2005.

Joseph Ray Myers, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, Daniel Luke Morgan, Justice and Public Safety Cabinet, Office of Legal Services, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice WINTERSHEIMER.

This appeal is from a decision of the Court of Appeals which affirmed an order of the circuit court dismissing a *pro se* petition by Stewart for declaratory judgment after the Parole Board reversed its decision to parole him.

The questions presented by Stewart involve whether the denial of parole was unlawful in that the Parole Board violated various statutes, exercised power arbitrarily and unconstitutionally applied statutes in an *ex post facto* manner.

The real issue involved in this case concerns the scope and authority of the Parole Board in rendering a decision to deny parole to a prison inmate.

Stewart was convicted of first-degree rape and first-degree burglary in 1985, receiving a sentence of ten years. He was paroled in 1990. The sex offender program legislation was not in effect at the time of the 1985 conviction for rape, but was in place when he was paroled in 1990. While on parole, Stewart committed first-degree robbery and while the robbery charge was pending, he came before the

court for the parole violation and was given a serve-out on the remainder of his original sentence. He was convicted of the robbery charge as well as being a second-degree persistent felony offender. His enhanced sentence for that crime was life in prison.

Stewart came before the Parole Board in January 2001, and it recommended that his parole be reinstated. Prior to its initial meeting, the chairman of the Parole Board wrote a memorandum to Stewart, stating that Stewart would be denied parole unless he was denied entrance into, terminated from, or completed the sex offender program.

In February 2001, a memorandum was sent to all Parole Board members stating that Stewart was recommended for parole on January 26, 2001, but due to the fact he was an untreated sex offender, it was requested by the chairman that they review the file and record their vote. All Parole Board members voted to send the case back before the Parole Board. A hand-written note on the memorandum indicated that the Board erroneously believed him to be one who wasn't required to attend the Sex Offender Treatment Program. Subsequently, the Board reviewed the case and denied parole, rescinding its previous recommendation and deferring the matter for further consideration in 30 months.

The Board found Stewart was a poor parole risk because of the seriousness of the offenses, the violence involved in the crime, his juvenile record, the crime involved a firearm, and he had violated parole when he had been previously released. The fact that Stewart had not completed the Sex Offender Treatment Program was not one of the stated reasons.

Stewart then filed a *pro se* declaratory action in circuit court which ruled in favor of the Parole Board and the Court of

Appeals affirmed that decision. In the meantime, Stewart was granted parole subject to conditions involving sexual offenders. He now contests this condition. This Court granted discretionary review.

### I(A). Rescission was Proper

█ In order to give a complete review of this matter, we now consider the question of rescission. Stewart contends that the decision of the Board to rescind its original recommendation for parole was improper because that decision was arbitrary and based on improper evidence. We disagree. *Belcher v. Kentucky Parole Board,* 917 S.W.2d 584 (Ky.App.1996), determined that all that was required in the parole review process when parole is denied is that the prisoner have the opportunity to be heard and that he be advised in general terms of the reason for the decision of the Board. The judicial standard of review of decisions of the Parole Board is limited to an examination of compliance with the terms of KRS 439.250 to 439.560. In this case, Stewart was advised of the reasons for the decision of the Board and had the opportunity to be heard. The due process rights of Stewart have been satisfied.

█ Denial of parole is an administrative function and this Court cannot probe the mind of the Board in order to determine the sufficiency of the reasons.

The parole-release decision ... depends on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience with the difficult and sensitive task of evaluating the advisability of parole release. Unlike the revocation decision, there is no set of facts which if shown, mandate a decision favorable to the individual.

*Belcher, supra,* 917 S.W.2d at 587 *quoting Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 9–10, 99 S.Ct. 2100, 2105, 60 L.Ed.2d 668 (1979); *see also Johnson v. Rodriguez,* 110 F.3d 299 (5th Cir.1997), *cert. den.,* 522 U.S. 995, 118 S.Ct. 559, 139 L.Ed.2d 400 (1997), which held in part that because there was no protected liberty or property interest in parole, prisoners cannot mount a challenge against any state parole review procedure on procedural or substantive due process grounds. The fact that the Board may have changed its mind before the inmate was actually placed on parole is not a violation of due process.

501 KAR 1:030 § 4(2)(a) provides that the Board may rescind a parole recommendation any time prior to the release of an inmate on parole. Consequently, an inmate, who has no fundamental right to parole, does not have an actual expectation of parole even after a recommendation has been made. Clearly, the Board has the authority to rescind any such recommendation at any time prior to the actual release.

### I(B). Calculation of Sentence

Stewart argues that the treatment program should not have been applicable to him because he had already served his ten-year sentence for rape when he came before the Parole Board in 2001. The Commonwealth responds that the rape sentence had been aggregated with his life sentence for second-degree persistent felony offender, thereby making him eligible as a sex offender. While Stewart was on parole in 1992 for the rape conviction, he committed the additional crime of first-degree robbery and was determined to be a second-degree persistent felony offender for which he received a life sentence.

The Court of Appeals acknowledged that the rape and burglary and the subsequent robbery and PFO sentences may have been ordered to run consecutively. The panel stated, however, that by law, the sentences may only run concurrently with each other. It relied on the cases of *Bedell v. Commonwealth,* 870 S.W.2d 779 (Ky.1994) and *Mabe v. Commonwealth,* 884 S.W.2d 668 (Ky.1994). Accordingly, the Court of Appeals rejected the argument that Stewart had already served-out his ten-year sentence for the sex offense when he came up for parole in 2001.

■ We do not agree with this analysis, although it is true that it is improper to order a term of years sentence to run consecutively with a life sentence. *Bedell, supra; see also Wells v. Commonwealth,* 892 S.W.2d 299 (Ky.1995). All of those cases involve situations where the defendant had been convicted at the same trial of crimes where one sentence was for a term of years and the other was for life. This situation is different. Here, Stewart was sentenced to a term of years in 1985, but was given a serve-out on that sentence to be completed in 1997. It was after he was given the serve-out that he received his life sentence. He would not start serving a life sentence until after he had finished his term of years. He came before the Parole Board during the term of his life sentence, not the rape conviction. However, we find that the calculation of multiple sentences in this particular situation does not control the final resolution of this matter. This case is governed pursuant to the authority of the Parole Board to rescind its initial recommendation for parole prior to any release being given. *Belcher.*

### II. Section Two

■ Stewart contends that the Board's decision to rescind its recommendation violated Section Two of the Kentucky Constitution. We have fully con-

sidered this argument and find it to be without merit. As this Court established long ago, parole is not a right but a privilege. *Commonwealth v. Polsgrove,* 231 Ky. 750, 22 S.W.2d 126 (1929). Granting of parole is not a right but a matter of grace or gift to persons deemed eligible. *Lynch v. Wingo,* 425 S.W.2d 573 (Ky. 1968).

### III. Ex Post Facto

■ Stewart claims that the decision of the Board to rescind its original favorable recommendation for parole was a violation of the federal and state constitutions because it applied KRS 439.340(11) and KRS 197.400–440 in an *ex post facto* manner to his prejudice.

■ It is well recognized that one of the functions of the *Ex Post Facto* Clause is to prevent a retroactive increase in punishment for a crime after its commission. Retroactive changes in laws relating to parole, in some instances, may be a violation. *See Garner v. Jones,* 529 U.S. 244, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000). However, in this situation, the decision to grant or deny parole is entirely discretionary with the Board. *Belcher.* Parole is a privilege and its denial has no constitutional implication. *Morris v. Wingo,* 428 S.W.2d 765 (Ky.1968). Although recognizing important concerns in this area of the law, the United States Supreme Court has noted that the *Ex Post Facto* Clause should not be used for micromanagement of an endless array of legislative adjustments to parole and sentencing procedures. The Court also stated that individual states must have flexibility in formulating parole procedures and addressing problems associated with confinement .and release. *See Garner, supra.*

In order to ascertain whether an *ex post facto* violation has occurred, the court must first determine whether a change in law or regulation creates a significant risk of increased punishment for the inmate. *California Dept. of Corrections v. Morales,* 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995). "When the rule does not by its own terms show a significant risk, the respondent must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule." *See Garner,* 529 U.S. at 255, 120 S.Ct. 1362.

None of these elements are present in this case. There is no enhancement of punishment or elongation of a sentence. The retroactive application of a Sex Offender Treatment Program does not create an unconstitutional *ex post facto* violation. *See Garland v. Commonwealth,* 997 S.W.2d 487 (Ky.App.1999). As noted in that case, the sentence remains at a fixed term and parole eligibility is of no consequence. It bears repeating, parole is a privilege and not a right. It is considered on a case-by-case basis. The imposition of a condition of attendance at a Sex Offender Treatment Program is not punishment. It is merely a condition of parole which is within the sound discretion of the Parole Board. The completion of the program does not make the punishment more onerous for crimes committed before its enactment. Stewart has not been disadvantaged.

Utilization of the Sex Offender Treatment Program by the Parole Board is one of the options available to the Board in determining the conditions of parole. The pertinent information required by statute is not limited to the individual facts of a particular crime, but rather encompasses matters that are relevant to the question of a determination that parole would be in

the best interests of society. The Sexual Offender Treatment Program is required for sex offenders, but that does not mean that it cannot be a condition of parole for other offenders on a case-by-case basis. There was no retroactive or arbitrary or capricious application of the responsibilities of the Board. There has been no violation of either the federal or state constitutions in any respect in this matter.

The opinion of the Court of Appeals is affirmed.

All concur.