RENDERED:  FEBRUARY 5, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-1162-MR

CYNTHIA MULLINS                                               APPELLANT

APPEAL FROM PIKE CIRCUIT COURT
v.          HONORABLE STEVEN D. COMBS, JUDGE
ACTION NO. 09-CR-00140

COMMONWEALTH OF KENTUCKY                          APPELLEE

OPINION
AFFIRMING

\*\* \*\* \*\* \*\* \*\*

BEFORE:  COMBS, KRAMER, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Cynthia Mullins, *pro se*, appeals from the Pike Circuit

Court's summary denial of her Kentucky Rules of Criminal Procedure (RCr) 11.42

motion.

> On April 9, 2009, Lora Hall Damron was shopping at the
> Pikeville, Kentucky, Wal-Mart with her three-year old
> daughter in tow.  The then eight-months pregnant
> Damron encountered Cynthia Mullins, a woman whom

she had never met before, several times throughout the store. Their first meeting was innocuous enough, as Mullins greeted Damron as if the two were acquaintances. However, Damron became increasingly suspicious of Mullins who appeared to be following her through the store. As Damron was collecting some last minute items from the soda aisle, Mullins approached her from behind. Turning, Damron witnessed Mullins wielding a five-inch steak knife. Mullins stabbed Damron three times in the left thigh before fellow shopper Randy Stiles tackled Mullins to the ground. A bleeding Damron was assisted by Wal-Mart employees who provided her a chair and applied pressure to her wounds. Meanwhile, Mullins was pinned to the floor by Stiles until the police arrived.

Detective Phillip Reed of the Pike County Police Department was the first to arrive at the scene. He observed a large amount of blood on Damron, saturating her pants, as well as blood on the floor. Detective Reed took custody of Mullins and interviewed her at the police station. His interviews with Mullins and witnesses revealed that Mullins selected a steak knife and a pair of scissors from the aisles of Wal-Mart, later electing to use the knife in the attack. The knife's protective plastic covering was found in Mullins's shopping cart.

Damron was taken by ambulance to Pikeville Medical Center, a local hospital, where she was examined by doctors. The treating physicians at Pikeville Medical Center, concerned with her unborn child's fluctuating heart rate, ordered that Damron be transferred by helicopter to the University of Kentucky Hospital in Lexington, Kentucky. At the University of Kentucky Hospital, Damron was given fifteen sutures to treat three 1-2 centimeter stab wounds on her left thigh. She was monitored for twenty-four hours by medical staff and released the following day.

Mullins was indicted by a Pike County grand jury on April 29, 2009. She was charged with one count of first-degree assault and as a second-degree persistent felony offender [PFO-2].

*Mullins v. Commonwealth*, No. 2011-SC-000634-MR, 2012 WL 6649199, *1-2 (Ky. Dec. 20, 2012) (footnote omitted).

As the case against her progressed, questions about Mullins's mental health and competency to stand trial were raised, and she was sent to the Kentucky Correctional Psychiatric Center (KCPC) in May 2009 and November 2009 for examination. Each time, after considering the testimony of the examiners, the trial court found Mullins to be competent to stand trial. In September 2010, the trial court ordered Mullins be temporarily committed to KCPC for examination and treatment.

Mullins's three-day jury trial began on May 23, 2010. The testimony established that Mullins repeatedly stabbed Damron in the abdomen and leg, and Damron had defensive cuts on her hands.[1] The identity of the perpetrator was not at issue.

Mullins's defense involved trying to mitigate or excuse her actions. The jury was instructed on first and second-degree assault, intoxication,

---

[1] While the Kentucky Supreme Court opinion focused just on the victim's leg wounds, there was evidence of additional injuries. Mullins herself admits in her briefs that she stabbed Damron in the abdomen.

Insanity, and guilty but mentally ill.

The jury found Mullins guilty but mentally ill of first-degree assault. After receiving the verdict, the Commonwealth moved to dismiss the PFO-2 charge, and the trial court dismissed it. After the penalty phase, the jury recommended the maximum twenty-year sentence.

In August 2011, Mullins moved to set aside the verdict and for a new trial on the basis that the pretrial services officer testified regarding confidential information about Mullins over her objection. The Commonwealth opposed the motion on the basis that it was untimely.

On September 8, 2011, Mullins was sentenced in accordance with the jury's recommendation. Mullins filed a direct appeal and raised the following issues:

> (1) the Commonwealth failed in its burden to show a serious physical injury justifying a finding of assault in the first degree; (2) the trial court erred in denying the motion for mistrial based on the improper testimony of a pretrial services officer; (3) the trial court erred in determining Mullins was competent to stand trial; (4) the Commonwealth committed a *Moss*[2] violation when it asked Mullins to comment on the truthfulness of a witness; and (5) the guilty but mentally ill jury instruction was incorrect.

*Id.* at *1.

---

[2] *Moss v. Commonwealth*, 949 S.W.2d 579, 583 (Ky. 1997).

The Kentucky Supreme Court affirmed, summarizing its decision as follows:

> The Commonwealth offered sufficient evidence of the victim's serious physical injury to support the assault in the first degree conviction. While the testimony of a pretrial services officer regarding completion of an [affidavit of indigency] and information supplied by Mullins was improperly admitted, palpable error did not result. The trial court did not err when it found Mullins competent to stand trial, as the court's competency determination was based on substantial evidence. Although the Commonwealth committed a *Moss* violation when it asked Mullins to comment on the truthfulness of a witness, the error did not constitute palpable error or prosecutorial misconduct justifying reversal. Finally, we find no palpable error in the language of the guilty but mentally ill jury instruction that tracked statutory language regarding treatment.

*Id.* at *11.

On June 28, 2018, Mullins filed a RCr 11.42 motion. While it is difficult to decipher the arguments Mullins was trying to raise, we interpret them as stating she received ineffective assistance of counsel because she was wrongfully convicted while insane and the evidence was insufficient to convict her because the victim was not severely injured. Mullins sought relief from her sentence.

On July 5, 2018, Mullins's motion was summarily denied on the basis that her conviction and sentence became final on March 21, 2013, and therefore, her current motion was over two years too late.

On appeal, Mullins's arguments continue to be challenging to understand.[3] Generously construing them, we interpret Mullins's ineffective assistance of counsel claims to be that she received ineffective assistance of counsel by counsel's failing to establish her incompetency, allowing her statements to the police to be testified to when she did not sign a *Miranda*[4] form, and allowing inappropriate testimony during the penalty phase of her trial. She also argues that the evidence was insufficient to convict her of first-degree assault. Mullins requests either time served or reversal for a new trial, explaining that it is inappropriate to prolong her "impairment" of being incarcerated. She also states that relief is sought for the reasons stated in her original appeal.

The Commonwealth argues that affirmance is appropriate because Mullins's RCr 11.42 motion is untimely and does not qualify for the exceptions to timeliness provided in RCr 11.42(10). Furthermore, the Commonwealth argues Mullins fails to adequately state a specific claim; fails to clearly assert that counsel was ineffective or thereby prejudiced her; her motion was a plea for leniency rather than relief; and to the extent she is arguing about the insufficiency of the evidence, her direct appeal already resolved that issue on the merits.

---

[3] We have serious concerns about Mullins's mental health based upon the incoherence of her arguments but note that she has stated she is receiving treatment while incarcerated.

[4] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

While we agree with the trial court that Mullins's RCr 11.42 motion was untimely and agree with the Commonwealth that relief is inappropriate on a variety of grounds, we briefly consider Mullins's arguments on the merits in the interest of fully addressing her concerns. This is appropriate because "it is well-settled that an appellate court may affirm a lower court for any reason supported by the record." *McCloud v. Commonwealth*, 286 S.W.3d 780, 786 n.10 (Ky. 2009).

To be entitled to the extraordinary relief of RCr 11.42, Mullins must establish she was deprived of her constitutional right to counsel. *Brown v. Commonwealth,* 253 S.W.3d 490, 500 (Ky. 2008). Under *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984), Mullins must show her counsel's performance was incompetent and prejudiced her because it fell below an objective standard of reasonableness and there is a reasonable probability that the result of the proceeding would have been different but for counsel's errors. "Where the record is clear that an ineffective assistance of counsel claim would ultimately fail the prejudice prong of *Strickland*, regardless of the outcome of a hearing on the deficiency prong, the trial court should be affirmed even in the absence of such a hearing." *Haley v. Commonwealth*, 586 S.W.3d 744, 751 (Ky.App. 2019).

As to Mullins's argument that she received ineffective assistance of counsel in trying to establish her incompetency, the record conclusively establishes

that counsel raised issues about her competency to stand trial, which led to two separate examinations at KCPC and a further temporary commitment. It was the trial court that was ultimately responsible for ruling that Mullins was competent based on the testimony of the examining doctors. The trial court's ruling was challenged on direct appeal, and the Kentucky Supreme Court affirmed on that issue, explaining there was substantial evidence to support this ruling. It noted that Dr. Free believed Mullins was malingering and summarized its ruling as follows: "In sum, Mullins failed to offer sufficient evidence of incompetence, and likewise failed to rebut Dr. Free's finding of competency to stand trial." *Mullins*, 2012 WL 6649199 at *8.

Mullins has not pointed to any evidence or potential mental health related testimony that could have been offered to support her argument that she was incompetent to stand trial. Indeed, even if her counsel had offered additional evidence, the trial court would still have been entitled to find her competent based on the other evidence.

Mullins's other arguments regarding ineffective assistance of counsel were not raised before the trial court, and therefore, they cannot form the basis of a reversal now.

> [T]his Court "is without authority to review issues not raised in or decided by the trial court." *Regional Jail Authority v. Tackett*, 770 S.W.2d 225, 228 (Ky.

1989). . . . Furthermore, an appellant "will not be permitted to feed one can of worms to the trial judge and another to the appellate court." *Kennedy v. Commonwealth,* 544 S.W.2d 219, 222 (Ky. 1976).

*Dever v. Commonwealth*, 300 S.W.3d 198, 202 (Ky.App. 2009)

However, even had these alleged errors been properly raised below, Mullins has failed to establish that she was thereby prejudiced. As to her suppression issue, Mullins states she refused to sign the *Miranda* form but does not explain what statements she made or how they may have harmed her, other than noting that she admitted to the police that she knew the victim was pregnant. It is not the signing of a *Miranda* form or not signing of a *Miranda* form that is dispositive as to whether statements are given voluntarily after appropriate warnings. *See Campbell v. Commonwealth*, 732 S.W.2d 878, 880–81 (Ky. 1987). Additionally, we do not see how admitting to noting Damron's obvious condition could have impacted the outcome of the trial. Given the overwhelming evidence connecting Mullins to the crime and the defenses she was pursuing, we cannot say that any admission she made, even including an admission that she stabbed Damron, would have been pivotal to Mullins's conviction, or that if suppression was sought and obtained there is a reasonable possibility that the outcome of the trial would have been changed.

Regarding the penalty phase of her trial, Mullins states her counsel was ineffective by: (1) allowing her own witness, who was called to testify about

her intoxication as a mitigating factor, to state she had a "sociopathic personality" and (2) allowing Damron to state that Mullins was crazy and could have been a psychotic murderer. We note that pursuant to KRS 532.055(2)(a)7., the Commonwealth was entitled to provide a criminal impact statement from the victim, and under subsection (2)(b) Mullins was entitled to introduce her own evidence in mitigation or in support of leniency. The purpose of the truth-in-sentencing statute "is to provide the jury with relevant information which may enable it to determine the appropriate sentence." *Wood v. Commonwealth*, 432 S.W.3d 726, 728 (Ky.App. 2014).

During the guilt phase of the trial, Mullins provided evidence to support her defense of insanity, and the statements her own expert made during the penalty phase about her being a "sociopathic personality" did not necessarily harm her at this juncture. Mullins had already been convicted and on balance it may have been to her benefit to have this expert testify as to her intoxication even if some of his other evidence was not helpful to her. Given the nature of the crime and the vulnerable victim, there is no reasonable possibility that the omission of this testimony would have changed the sentence the jury chose to impose.

As to Damron's written impact statement, she did not state that Mullins was crazy and could have been a psychotic murderer. Damron stated that Mullins was "cold-hearted" and "extremely violent." However, the crime itself

-10-

and the testimony surrounding it could have led the jury to a similar conclusion. It was appropriate for the victim to share the impact the crime had on her for the jury to consider.

Mullins also raises questions about the sufficiency of the evidence, arguing the Commonwealth failed to prove a severe physical injury to Damron because the witnesses exaggerated the victim's loss of blood and how Mullins used the knife, and she was overcharged as the Commonwealth was not able to establish a physical injury in Damron that caused prolonged impairment to her health. These issues were thoroughly considered in Mullins's direct appeal and resolved.

First-degree assault is committed when a defendant "intentionally causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument[.]" KRS 508.010(1)(a). "Serious physical injury" as defined in KRS 500.080(15) "means physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ." The Kentucky Supreme Court determined that the blood loss of Damron created a substantial risk of death, thereby supporting this charge and Mullins's conviction for it. *Mullins*, 2012 WL 6649199 at *2-3. It was up to the jury to resolve whom to believe about the severity of Damron's injuries.

-11-

To the extent that Mullins is arguing she deserves leniency because she has adequately paid for this crime and should not be fully culpable given her mental health issues, it is not within our power to relieve her from the consequences of a valid judgment and sentence. This argument could, instead, provide a basis for a clemency application to the governor. *See* KY. CONST. §77.[5]

The untimeliness of Mullins's motion provides an additional reason to affirm the trial court's summary denial of her motion for RCr 11.42 relief. Mullins provides no explanation as to why her motion could not be filed within the three years provided by the rule, and we see no grounds on which her motion could qualify for the limited exceptions to that rule. RCr 11.42(10). While "mental impairment" may in an appropriate case provide an exemption to the three-year deadline, "a claim of mental incompetence does not constitute a *per se* reason to toll a statute of limitations." *Commonwealth v. Stacey*, 177 S.W.3d 813, 816-17 (Ky. 2005).

Accordingly, we affirm the Pike Circuit Court's summary denial of Mullins's RCr 11.42 motion.

---

[5] "Kentucky's statute *prohibits parole* absent a determination that such would be in the best interest of society." *Belcher v. Kentucky Parole Bd.*, 917 S.W.2d 584, 587 (Ky.App. 1996). We also note that Mullins is not entitled to be considered for parole until she has completed 85% of her sentence. KRS 439.3401(3), (6). While "the decision to grant clemency is left to the unfettered discretion of the Governor[,]" *Baze v. Thompson*, 302 S.W.3d 57, 60 (Ky. 2010), this is not the typical type of case in which a governor might choose to exercise discretion.

COMBS, JUDGE, CONCURS.

KRAMER, JUDGE, CONCURS IN RESULT ONLY.


BRIEFS FOR APPELLANT:

Cynthia Mullins, *pro se*
PeeWee Valley, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Micah Brandon Roberts
Assistant Attorney General
Frankfort, Kentucky