RENDERED:  JUNE 4, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0878-MR

KENNETH W. GOBEN                                                    APPELLANT

APPEAL FROM LYON CIRCUIT COURT
v.        HONORABLE CLARENCE A. WOODALL, III, JUDGE
ACTION NO. 19-CI-00127

KATHLEEN M. KEENEY; DEEDRA
HART, WARDEN; AND AMY JONES                          APPELLEES

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  GOODWINE, MAZE, AND MCNEILL, JUDGES.

MAZE, JUDGE:  Kenneth W. Goben filed a petition for declaration of rights in the Lyon Circuit Court asking for a declaration that his parole eligibility date has been calculated incorrectly.  The circuit court dismissed the petition, concluding Goben's parole eligibility date had been properly determined.  We reverse because the circuit court's construction of the relevant administrative regulation is at odds

with its plain language and remand for further proceedings consistent with this opinion.

Although the circuit court record does not contain documentation of all the underlying facts, it appears undisputed that in December 2013 Goben was sentenced to thirty years' imprisonment after being convicted of, among other things, manufacturing methamphetamine in the first degree and being a persistent felony offender[1] in the first degree (PFO I). Apparently, Goben was then informed his parole eligibility date was November 2019. However, after Goben had already begun serving that sentence, he was again convicted of manufacturing methamphetamine in the first degree[2] and of being a PFO I and sentenced to life

---

[1] "Conviction as a Persistent Felony Offender is not a charge of an independent criminal offense but rather a particular criminal status. . . . Persistent Felony Offender proceedings involve the status of the offender and the length of the punishment, not a separate or independent criminal offense." *White v. Commonwealth*, 770 S.W.2d 222, 224 (Ky. 1989). "There is no additional punishment imposed by a persistent felony offender conviction, merely a more severe punishment. [Kentucky Revised Statutes] KRS 532.080 does not create or define a criminal offense. It recognizes a status and, in a proceeding separate and apart from the initial trial, fixes a penalty which is to be imposed rather than the one fixed by the jury on the initial trial." *Hardin v. Commonwealth*, 573 S.W.2d 657, 661 (Ky. 1978).

[2] Goben already had been convicted of manufacturing methamphetamine. Nonetheless, the subsequent manufacturing methamphetamine conviction was classified as a first offense. Though the record shows the dates of conviction for the methamphetamine offenses, it does not show when Goben engaged in the underlying criminal conduct for each offense, so it is theoretically possible that his second conviction was based upon conduct which occurred before the conduct underlying his first conviction. Regardless, classifying his second conviction as a first offense is significant because a first offense for manufacturing methamphetamine is deemed a Class B felony but a second or subsequent offense is deemed a Class A felony. *See* KRS 218A.1432(2).

imprisonment.  Consequently, the Department of Corrections changed Goben's parole eligibility date from November 2019 to November 2029.

Dissatisfied with that change, Goben unsuccessfully sought administrative relief within the Department of Corrections.[3]  Goben then filed the petition for declaration of rights in October 2019 seeking:  a November 2019 parole eligibility date; a return to an "outside detail" at Kentucky State Penitentiary (KSP); restoration of his job as a boiler room worker; and reimbursement of his incurred costs and fees.

The defendants filed a motion to dismiss for failure to state a claim pursuant to Kentucky Rule of Civil Procedure (CR) 12.02.  The gist of their motion was that Goben was sentenced as if he had committed a Class A felony and thus was subject to the same initial parole eligibility requirements as persons convicted of Class A felonies.  Defendants relied upon 501 Kentucky Administrative Regulations (KAR) 1:030 Section 3, which provides in relevant part as follows:

> (1) Initial parole review. Except as provided by Section 2 of this administrative regulation, a person confined to a state penal institution or county jail shall have his case reviewed by the board, in accordance with the following schedules:
> . . . .
>
> (e) For a crime:
>
> . . . .

---

[3] Appellees do not argue that Goben failed to exhaust his administrative remedies.

4. Committed on or after June 26, 2007,
which is:

. . . .

b. Class A felony . . . .

----------------------------------------------------------------------
| Sentences of a number of years | 85% of sentence received or 20 years, whichever is less |
| --- | --- |
| Sentences of life | 20 years |
----------------------------------------------------------------------

The circuit court agreed and dismissed Goben's petition in April 2020. Goben then filed this appeal, naming Kathleen M. Keeney and DeEdra Hart as appellees.[4]

---

[4] Kathleen M. Keeney, also referred to as Kathleen Kenney at times in the record, was named as a defendant and appellee due to her former status as the Commissioner of the Department of Corrections (the Department). Cookie Crews is now the Commissioner, having been appointed by Governor Beshear to that position in 2020. However, the Department, though represented here by its own Office of Legal Services, oddly has not moved to substitute Crews for Keeney as an appellee. *See* CR 25.04 ("When an officer of the state, a county, city, or other governmental agency is a party to an action and during its pendency dies, resigns, or otherwise ceases to hold office, the action may be continued and maintained by or against his successor. Substitution may be made upon written motion of the successor or any party."). Similarly, DeEdra Hart was named as a defendant and appellee because she formerly was the KSP Warden. Scott Jordan became the KSP Warden in 2020, but the Department also has not moved to substitute him for Hart as an appellee. Although a motion to substitute is better practice, it is not mandatory "so long as the real party in interest is before the court." *Koehler v. Commonwealth by and ex rel. Luckett*, 432 S.W.2d 397, 399 (Ky. 1968).

Goben also should have named the Department itself as a defendant in his declaratory judgment action, though "the custom has developed in declaratory judgment litigation for the inmate to designate the warden of the DOC penal institution in which he is incarcerated as the defendant rather than the [Department of Corrections] DOC itself." *Reed v. Commonwealth*, No. 2013-SC-000707-MR, 2015 WL 2266260, at *2 n.2 (Ky. May 14, 2015). We cite *Reed* only as an illustration showing that other inmates, not just Goben, have named the warden of their place of incarceration in lieu of naming the Department as a defendant in declaratory judgment petitions.

-4-

When ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, a court must construe the pleadings in the light most favorable to the plaintiff and "must ask if the facts alleged in the complaint can be proved, would the plaintiff be entitled to relief?" *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010) (internal quotation marks and citation omitted). A ruling on a motion to dismiss for failure to state a viable claim presents a question of law, so we review the circuit court's decision *de novo*. *Id.*

The overarching question presented here is whether a person who commits a nonviolent Class B felony but receives a life sentence by virtue of being a PFO I is subject to the twenty-year waiting period for parole eligibility under 501 KAR 1:030 Section 3(1)(e)4.? The answer is no because Goben did not commit any of the offenses enumerated therein.

In Kentucky, there are five categories of felonies: "(1) Capital offenses; (2) Class A felonies; (3) Class B felonies; (4) Class C felonies; and (5) Class D felonies." KRS 532.010. For a capital offense, the punishment ranges from twenty years' imprisonment to the death penalty. KRS 532.030(1). For

Goben named the then-Commissioner of the Department and the then-warden of his place of incarceration as defendants in his petition. Although it would have been better if he had named the Department itself, on balance and considering the lack of any objections by Keeney and/or Hart regarding Goben's failure to name the Department as a defendant/appellee, we are satisfied that the Department's interests are adequately represented before us.

Class A felonies, the penalty range is a term of years between twenty and fifty years' imprisonment, or life imprisonment. KRS 532.030(2); KRS 532.060(2)(a); KRS 532.020(1)(d). For Class B felonies, the penalty range is ten to twenty years' imprisonment. KRS 532.060(2)(b); KRS 532.020(1)(c). Class C and D felonies incur shorter terms of incarceration. Thus, absent a PFO designation, only persons convicted of capital offenses and Class A felonies may receive a sentence of life imprisonment.

However, a person found to be a PFO I may also receive a life sentence upon conviction for an underlying Class B felony. KRS 532.080(1) provides that "[w]hen a defendant is found to be a persistent felony offender, the jury, in lieu of the sentence of imprisonment assessed under KRS 532.060 for the crime of which such person presently stands convicted, shall fix a sentence of imprisonment as authorized by subsection (5) or (6) of this section." And KRS 532.080(6)(a), which governs here, provides that "[i]f the offense for which he presently stands convicted is a Class A or Class B felony" then the person "shall be sentenced to an indeterminate term of imprisonment, the maximum of which shall not be less than twenty (20) years nor more than fifty (50) years, or life imprisonment . . . ."

In other words, PFO I offenders who commit a Class B felony, even a nonviolent one, are sentenced *as if* they committed a Class A felony, which opens

up the possibility of the offender receiving a life sentence. But that does not change the fact that the offender actually only *committed* a Class B felony. Thus, the issue is whether a person convicted of a Class B felony who is sentenced to life imprisonment based upon being a PFO I must wait twenty years before being first eligible for parole consideration under 501 KAR 1:030 Section 3(1)(e)4. because they were sentenced to life *as if* they had committed a Class A felony (the Department's position)? Or is such an offender's initial parole eligibility still ten years because they actually only *committed* an underlying Class B felony not listed in 501 KAR 1:030 Section 3(1)(e)4. (Goben's core position)? The parties' arguments to the contrary notwithstanding, there appears to be no factually similar precedent which conclusively answers this discrete question because former cases involve differentiating factors like application of different versions or sections of 501 KAR 1:030 or do not involve a life sentence.

Before determining whether 501 KAR 1:030 Section 3(1)(e)4.'s initial twenty-year eligibility based upon a life sentence applies here, we first briefly address Goben's constitutional arguments. The existence of parole at all is a matter of pure legislative grace. *See, e.g.*, *Belcher v. Kentucky Parole Bd.*, 917 S.W.2d 584, 587 (Ky. App. 1996). Accordingly, the General Assembly has discretion to fashion the parameters of the parole system it created (within, of course, broad constitutional parameters prohibiting things like arbitrariness and

cruel and unusual punishment). *Commonwealth v. Vincent*, 70 S.W.3d 422, 424 (Ky. 2002) ("[P]arole is a matter of legislative grace and . . . the general assembly may impose such limitations, restrictions and conditions as it deems best for society.") (internal quotation marks and citation omitted). "As such, it is not for this Court to determine the wisdom of the General Assembly's exercise of its power in this area." *Id.* And the General Assembly's delegation to the Parole Board of the task of promulgating regulations detailing parole eligibility requirements set forth in KRS 439.340(3)(b)[5] is permissible. *Willard v. Ferguson*, 358 S.W.2d 516, 516 (Ky. 1962) ("It must be kept in mind that parole is a matter of legislative grace and that the general assembly may impose such limitations, restrictions and conditions as it deems best for society. It may likewise invest the [Parole] Board with power to make rules and regulations with respect to eligibility.").

However, Goben possesses a "a legitimate interest in a decision rendered in conformity with the established procedures and policies; one which is based upon consideration of relevant criteria." *Belcher*, 917 S.W.2d at 587. The

---

[5] KRS 439.340(3)(b) provides in relevant part that "[e]xcept as provided in this section, the board shall adopt administrative regulations with respect to the eligibility of prisoners for parole . . . ."

Department and circuit court's construction of 501 KAR 1:030 does not follow the established initial parole eligibility policies set forth in its plain language.

The General Assembly has set forth a default position that a PFO I whose underlying conviction is a Class A, B, or C felony is first eligible for parole consideration in ten years. *See* KRS 532.080(7) ("If the offense the person presently stands convicted of is a Class A, B, or C felony, the person shall not be eligible for parole until the person has served a minimum term of incarceration of not less than ten (10) years, unless another sentencing scheme applies."). But the General Assembly made that default position conditional by adding language to KRS 532.080(7) specifying that the ten-year eligibility statement applies "unless another sentencing scheme applies." The Parole Board validly created "another sentencing scheme" when it adopted 501 KAR 1:030. But that alternate sentencing scheme does not apply here.

Generally, we construe statutes, and administrative regulations, according to their plain language. *See, e.g.*, *Comprehensive Home Health Services, Inc. v. Professional Home Health Care Agency, Inc.*, 434 S.W.3d 433, 441 (Ky. 2013). And the plain language of 501 KAR 1:030 Section 3(e)4. premises initial parole eligibility on whether the offender "[c]ommitted" one of the enumerated types of offenses. It is uncontested that Goben committed a Class B, nonviolent

felony, and it is uncontestable that felony is not listed in 501 KAR 1:030 Section

3(1)(e)4. [6]

---

[6] 501 KAR 1:030 Section 3(1)(e) states that it applies to a "crime":

> 4. Committed on or after June 26, 2007, which is:
>
> > a. A capital offense;
> >
> > b. Class A felony;
> >
> > c. Complicity to a Class A felony;
> >
> > d. Class B felony involving the death of the victim or serious physical injury to a victim;
> >
> > e. The commission or attempted commission of a Class A or B felony sex offense in KRS Chapter 510;
> >
> > f. The use of a minor in a sexual performance as described in KRS 531.310(2)(b) and 531.310(2)(c);
> >
> > g. Promoting a sexual performance by a minor as described in KRS 531.320(2)(b) and 531.320(2)(c);
> >
> > h. Unlawful transaction with a minor in the first degree as described in KRS 530.064(1)(a) when the minor is less than sixteen (16) years old or if the minor incurs physical injury;
> >
> > i. Human trafficking as described in KRS 529.010(5)(b) when the victim is a minor;
> >
> > j. Burglary in the first degree accompanied by the commission or attempted commission of an assault described in KRS 508.010, 508.020, 508.032, or 508.060;
> >
> > k. Burglary in the first degree accompanied by the commission or attempted commission of kidnapping as prohibited by KRS 509.040; or
> >
> > l. Robbery in the first degree[.]

It is beyond rational dispute that Goben's manufacturing methamphetamine first offense conviction is not among those listed felonies (though it would have been if it had been classified

The Department's argument is that Goben was sentenced as if he committed a Class A felony. We agree. But 501 KAR 1:030 Section 3(1)(e)4. does not premise its applicability on persons sentenced "as if" they committed one of the enumerated offenses, including Class A felonies. Instead, it plainly premises its applicability only on the actual offense *committed*. Accepting the Department's argument would require us to add language to the regulation stating that it applies to persons sentenced *as if* they committed a Class A felony. We are not free to add language to the regulation by judicial fiat. *Fox*, 317 S.W.3d at 8 ("It is well settled law that a court may not add language to the written law to achieve a desired result.").

We are aware that 501 KAR 1:030 Section 3(1)(e)4., as written, affords someone like Goben who is serving a life sentence a markedly earlier parole eligibility date than someone who committed, for example, a nonviolent Class A felony (such as a second or subsequent manufacturing methamphetamine offense) and received a twenty-five-year sentence, which is near the minimum sentence for a Class A offense.[7] But we must presume such a result, though odd at

as a second offense since a second or subsequent manufacturing methamphetamine offense is a Class A felony).

[7] 501 KAR 1:030 Section 3(1)(e)4. provides that *anyone* convicted of *any* Class A felony who is sentenced to a term of years is eligible for parole in either twenty years or after serving 85% of his/her sentence, whichever is less. So, in our example, a person with a twenty-five-year term would have to serve twenty years before being eligible for parole because twenty years is less than 21.25 (85% of the person's twenty-five-year sentence).

first blush, was intentional. We cannot conclude that the regulation's affording more stringent parole consideration to offenders who committed, for example, Class A felonies than to offenders who committed, for example, nonviolent Class B felonies (even if the offender is also a PFO I) is so absurd and irrational that its plain language may not be taken at face value. *Bailey v. Reeves*, 662 S.W.2d 832, 834 (Ky. 1984) ("We have a duty to accord to words of a statute their literal meaning unless to do so would lead to an absurd or wholly unreasonable conclusion.").[8] The general thrust of Kentucky's criminal law system is to treat persons who commit higher classifications of felonies more stringently than persons who commit lower classifications of felonies. So, it is not wildly illogical to defer initial parole eligibility longer for persons convicted of committing Class

---

[8] The appellees have insisted that the plain language of the regulation applies to Goben and consequently have not argued that the regulation's plain language leads to an absurd, jurisprudentially intolerable result, so we decline to explore further that avenue *sua sponte*. Moreover, this case is distinguishable from *Sanders v. Commonwealth*, 844 S.W.2d 391 (Ky. 1992).

In that case, the plain language of a violent offender statute meant that all violent offenders sentenced to life imprisonment were eligible for parole consideration in twelve years but violent offenders serving a term of years had to complete fifty percent of their sentences before being eligible for parole consideration. *Id.* at 393-94. Our Supreme Court found that disparity absurd and creatively construed the statute to avoid that illogical result by grafting language of its own creation onto the statute. This case does not present a similarly blatant, wholly illogical disparate treatment of offenders. Reasonable minds may differ as to its wisdom, but it is not grossly, patently improper or illogical for offenders convicted of Class A offenses (or other sex crimes/crimes of violence listed in 501 KAR 1:030 Section 3(1)(e)4.) to receive less favorable initial parole eligibility terms than offenders convicted of non-listed Class B felonies, even if those offenders had significant prior criminal histories.

A felonies than persons convicted of committing nonviolent Class B felonies—even PFOs.

We also recognize that reasonable minds may differ that the end result is that Goben's subsequent, serious post-conviction felony convictions had no impact on his initial parole eligibility date. But the wisdom of treating nonviolent recidivists like Goben more leniently for initial parole eligibility purposes than persons who commit *any* of the enumerated felonies listed in 501 KAR 1:030 Section 3(1)(e)4., regardless of that person's potential lack of criminal history, is a matter within the purview of the Department/the General Assembly, not this Court. Furthermore, Goben's eligibility for parole is not the same thing as his entitlement to it. *See Stewart v. Commonwealth*, 153 S.W.3d 789 (Ky. 2005).

The functional upshot is that the chart following 501 KAR 1:030 Section 3(1)(e)4., requiring certain offenders to serve twenty years before being eligible for parole (or 85% of the offender's sentence, whichever is less), does not apply to Goben because he committed none of the felonies listed therein. Thus, he remains subject to the default ten-year parole eligibility requirement found in KRS 532.080(7) for a PFO I convicted of a Class B felony.

The circuit court's contrary conclusion cannot stand. Of course, the ultimate merits of Goben's petition are not before a court at the motion to dismiss stage. However, the pertinent facts appear to be uncontested. Indeed, Goben states

in his reply brief that he "agrees with the Appellees['] version of the Appellant's convictions and sentencing." Reply brief, p. 1. Accordingly, the plain language of 501 KAR 1:030 Section 3(e)4. and KRS 532.080(7), when applied to these undisputed facts, leads to the inescapable conclusion that Goben remained eligible for initial parole consideration in ten years.

We thus reverse the circuit court's dismissal of the petition and remand the matter with instructions to issue a declaration of Goben's rights consistent with our analysis. The circuit court must also determine whether Goben is entitled to any of his requested costs/fees. However, we decline to order the Department to assign any certain classification or job status to Goben as those are matters generally left to the Department's discretionary purview. *See, e.g.*, *Marksberry v. Chandler*, 126 S.W.3d 747, 751 (Ky. App. 2003), *as modified on grant of reh'g* (Jan. 30, 2004).

For the foregoing reasons, the Lyon Circuit Court's order of dismissal is reversed and this matter is remanded for further proceedings consistent with this Opinion.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEES: |
|---|---|
| Kenneth Goben, *pro se* | John Hamlet |
| Eddyville, Kentucky | Frankfort, Kentucky |